[No. S131048. Mar. 27, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
SAMUEL SHARAD SHABAZZ, Defendant and Appellant.

## Counsel

Christine Vento, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, William T. Harter, Donald E. De Nicola, Jaime L. Fuster, Kristofer Jorsad and Linda C. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

David R. LaBahn; Bonnie M. Dumanis, District Attorney (San Diego), Charles E. Nickel and James E. Atkins, Deputy District Attorneys, for California District Attorneys Association as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**GEORGE, C. J.**—We granted review in this case to address the following two questions: (1) Does the special circumstance set forth in Penal Code section 190.2, subdivision (a)(22) (hereafter section 190.2(a)(22)),[1] which authorizes imposition of a punishment of death or life imprisonment without the possibility of parole upon an active participant of a criminal street gang who "intentionally killed the victim" to further the activities of the gang, apply to a defendant who discharged a firearm with the intent to kill one person but missed the intended victim and killed another individual? (2) Is a defendant who is sentenced to life imprisonment without the possibility of parole for first degree murder also subject to a sentence enhancement of 25 years to life under section 12022.53, subdivision (d) (hereafter section 12022.53(d)), for personally discharging a firearm and causing death in the commission of the murder, or does section 12022.53, subdivision (j) (hereafter section 12022.53(j)), preclude imposition of that enhancement in view of the lengthier term of incarceration—that is, life imprisonment without the possibility of parole—imposed upon the defendant for the underlying felony?

As we shall explain, we conclude that a finding of the special circumstance set forth in section 190.2(a)(22) may be upheld when a defendant, while an active participant in a criminal street gang and in furtherance of that gang's activities, has performed an act with an intent to kill that resulted in the killing of any individual. We therefore affirm the part of the Court of Appeal's judgment that so held.

With regard to the sentence enhancement of 25 years to life embodied in section 12022.53(d), we are of the view that the enhancement may be imposed notwithstanding the circumstance that defendant's sentence for the underlying felony is life imprisonment without the possibility of parole. To hold otherwise would contravene both the plain language and the legislative intent underlying section 12022.53 as a whole, and would exempt more serious offenders from a punishment imposed upon less serious offenders. We therefore reverse the part of the Court of Appeal's judgment that held to the contrary, and remand the matter to that court for proceedings consistent with the views expressed in our opinion.

### I.

The relevant facts are as follows.

On May 28, 2000, in the early evening, victim Lori Gonzalez, 20 years of age, sat in the driver's seat of a blue Chevrolet Caprice that was stopped in

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

the drive-through lane at a Popeyes Chicken & Biscuits restaurant, located at La Brea Avenue and Jefferson Street in Los Angeles.

Darrell Miller, who testified under a grant of immunity and in exchange for a reduction of his prison sentence in connection with several other unrelated felonies, was a member of the Geer Street Crips gang. He observed the blue Caprice at the restaurant. He thereafter drove to West Boulevard and Adams Street to sell drugs. Having received a cellular telephone call from an acquaintance indicating that members of the rival Bloods gang had used the blue Caprice in a recent drive-by shooting, Miller passed this information on to several other members of the Crips, including defendant Samuel Sharad Shabazz, a member of the West Boulevard Crips. These individuals then drove to the restaurant.

Defendant donned gloves and a beanie, exited from Miller's vehicle, walked up to the passenger side of the blue Caprice, and fired repeatedly at Gonzalez's passenger, Ernest Gray, a member of the rival Black P Stone Bloods gang. Gray ducked when he saw the firearm, and the shots hit and killed Gonzalez.[2]

A jury convicted defendant of first degree murder and found true the special circumstance that defendant intentionally killed Gonzalez while he was an active participant in a criminal street gang and that the murder was carried out to further the activities of the gang. (§ 190.2(a)(22).) The jury further found that, in committing the murder, defendant personally and intentionally discharged a firearm, thereby causing Gonzalez's death within the meaning of section 12022.53(d). The trial court thereafter sentenced defendant to life in prison without the possibility of parole for the murder of Gonzalez, plus 25 years to life in prison for the enhancement based on defendant's use of a firearm in the commission of the murder.[3]

---

[2] A student at Saddleback College, Gonzalez was the granddaughter of Bernard Parks, then Chief of the Los Angeles Police Department. Unaffiliated with any gang, Gonzalez was killed one week shy of her 21st birthday. Apparently her death was attributable simply to being in the wrong place at the wrong time.

[3] In addition to sentencing defendant for the first degree murder of Lori Gonzalez, the trial court sentenced defendant to life in prison with the possibility of parole, plus a 20-year enhancement for discharging a firearm (§ 12022.53(d)), based upon defendant's conviction of the attempted murder of Ernest Gray. The trial court imposed seven additional consecutive life sentences (and, in certain cases, firearm-use enhancements) based upon defendant's convictions of the attempted murders of Randy Robinson, Shawn Smith, Thomas Jones, Calvin Shaw, Ladroe Watson, Lamont Sims, and Mark Robinson in other drive-by shootings that are unrelated to the legal issues before us. The court also imposed a restitution fine in the amount of $10,000. (§ 1202.4, subd. (b).)

On appeal, defendant contended that the criminal-street-gang special circumstance set forth in section 190.2(a)(22) does not apply to him, because that provision requires that defendant "intentionally killed the victim" and defendant intended to kill Ernest Gray, not the actual victim, Lori Gonzalez. In rejecting defendant's position, the Court of Appeal held: "[T]he section 190.2(a)(22) special circumstance requires that the defendant (1) possessed the intent to kill, (2) was an active participant in a criminal street gang, and (3) carried out the murder in furtherance of the gang's activities. There is no requirement that the person who was murdered be the person whom the defendant intended to kill." The Court of Appeal therefore concluded that the jury's true finding as to the special circumstance was appropriate as to the murder of Gonzalez.

With regard to the firearm-use enhancement set forth in section 12022.53(d), defendant contended that imposition of the 25-year-to-life enhancement was not authorized by the language of section 12022.53(j). Specifically, defendant asserted that because the sentence—life imprisonment without the possibility of parole—imposed upon him for the underlying felony was a "longer term of imprisonment" than the prescribed 25-year-to-life enhancement, section 12022.53(j) precluded imposition of the enhancement. The Court of Appeal agreed and ordered the enhancement stricken, expressly disagreeing with the decision rendered by the Court of Appeal in *People v. Chiu* (2003) 113 Cal.App.4th 1260 [7 Cal.Rptr.3d 193] (*Chiu*), which held that a section 12022.53 enhancement properly may be imposed under such circumstances. (See also *People v. Coker* (2004) 120 Cal.App.4th 581, 589–590 [15 Cal.Rptr.3d 553] (*Coker*) [reaching a conclusion consistent with *Chiu*]; *People v. Bracamonte* (2003) 106 Cal.App.4th 704 [131 Cal.Rptr.2d 334] [although the Court of Appeal did not discuss section 12022.53(j), it upheld a 25-year-to-life enhancement under section 12022.53(d) in addition to a sentence of life imprisonment without the possibility of parole].)

Defendant and the People each sought review. We granted both petitions and limited the issues to be briefed and argued to the two issues set forth *ante*. We turn first to the proper interpretation of the special circumstance set forth in section 190.2(a)(22).

## II.

As noted, defendant was charged with and convicted of the first degree murder of Lori Gonzalez, and the jury found true the allegation that the offense met the requirements of the gang-murder special circumstance. (§ 190.2(a)(22).) Section 190.2(a)(22) provides: "The penalty for a defendant who is found guilty of murder in the first degree is death or imprisonment in

the state prison for life without the possibility of parole if one or more of the following special circumstances has been found under section 190.4 to be true: [¶] . . . [¶] (22) The defendant intentionally killed the victim while the defendant was an active participant in a criminal street gang, as defined in subdivision (f) of section 186.22, and the murder was carried out to further the activities of the criminal street gang."[4]

Defendant contends the gang-murder special circumstance set forth in section 190.2(a)(22) is inapplicable to him because that provision requires that he "intentionally killed the victim," and defendant intended to kill Ernest Gray, not the actual victim, Gonzalez. As we shall explain, we reject defendant's argument because it improperly minimizes the significance of the circumstance that the provisions of section 190.2(a)(22) were drafted, adopted, and reasonably must be interpreted against the background of the transferred intent doctrine, a theory of liability that long has been part of California law and one that "connotes a *policy*—that a defendant who shoots at an intended victim with intent to kill but misses and hits a bystander instead should be subject to the same criminal liability that would have been imposed had he hit his intended mark." (*People v. Scott* (1996) 14 Cal.4th 544, 551 [59 Cal.Rptr.2d 178, 927 P.2d 288] (*Scott*)]; see also *People v. Suesser* (1904) 142 Cal. 354, 365–367 [75 P. 1093] [interpreting California's murder statute as embodying the transferred intent doctrine].)

"Under the classic formulation of California's common law doctrine of transferred intent, a defendant who shoots with the intent to kill a certain person and hits a bystander instead is subject to the same criminal liability that would have been imposed had ' "the fatal blow reached the person for whom intended." ' [Citation.] In such a factual setting, the defendant is deemed as culpable as if he had accomplished what he set out to do." (*Scott*, *supra*, 14 Cal.4th at p. 546 [where defendants fired an automatic weapon into a public park in an attempt to kill a certain individual, instead killing a bystander, the jury properly was instructed on the transferred intent theory of liability for first degree murder]; see also *People v. Sears* (1970) 2 Cal.3d 180, 189 [84 Cal.Rptr. 711, 465 P.2d 847] ["if a person purposely and of his deliberate and premeditated malice attempts to kill one person but by mistake

---

[4] Section 186.22, subdivision (f), defines a "criminal street gang" as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more . . . criminal acts [enumerated in section 186.22, subdivision (e), paragraphs (1) to (25)], having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."

and inadvertence kills another instead, the law transfers the intent and the homicide so committed is murder of the first degree"]; 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000 & 2005 supp.) Elements, §§ 13–15, pp. 215–219; *id.* (2005 supp.) § 15A, pp. 47–48 (Witkin & Epstein).)[5]

In the present case, the trial court instructed the jury pursuant to CALJIC No. 8.65, which accurately distilled the foregoing principles,[6] as well as under CALJIC No. 8.81.22, pertaining to the gang-murder special circumstance.[7]

As noted *ante*, defendant contends the gang-murder special circumstance applies only to those murders where the intended victim was killed, and that the doctrine of transferred intent is inapplicable to the gang-murder special circumstance. Although defendant acknowledges the lengthy history of the transferred intent doctrine (extending back to 16th century England (see *Scott, supra*, 14 Cal.4th at pp. 548–549)), he notes the dearth of California case law specifically addressing the applicability of the doctrine in the special circumstance setting. Defendant relies upon our decision in *People v. Bland, supra*, 28 Cal.4th 313, wherein we declined to extend the doctrine of transferred intent to the inchoate crime of attempted murder. *Bland* is clearly distinguishable from the present case, however, because in *Bland* the unintended victim did not die and thus we were not confronted with the issue

---

[5] In considering the applicability of the doctrine of transferred intent, the circumstance that defendant also was charged with, and convicted of, the attempted murder of Ernest Gray, does not aid defendant's position. (See *Scott, supra*, 14 Cal.4th at p. 546 ["Contrary to what its name implies, the transferred intent doctrine does not refer to any actual intent that is 'used up' once it has been employed to convict a defendant of a specific intent crime against an intended victim. Rather, the doctrine of transferred intent connotes a policy. As applied here, the transferred intent doctrine is but another way of saying that a defendant who shoots with an intent to kill but misses and hits a bystander instead should be punished for a crime of the same seriousness as the one he tried to commit against his intended victim"].) A person who shoots at one person, missing the target and killing another, instead, has committed crimes against two persons. (*Ibid.*; see also *People v. Bland* (2002) 28 Cal.4th 313, 331 [121 Cal.Rptr.2d 546, 48 P.3d 1107] ["When one attempts to kill one person but instead kills another, there are always two victims: the intended target and the one actually killed"]; 1 Witkin & Epstein, *supra*, Elements, § 15, p. 218.)

[6] CALJIC No. 8.65, as read to the jury, instructed: "When one attempts to kill a certain person but by mistake or inadvertence kills a different person, the crime, if any, so committed is the same as though the person originally intended to be killed had been killed."

[7] CALJIC No. 8.81.22, as read to the jury, instructed: "To find that the special circumstance, intentional killing by an active street gang member in furtherance of gang activity, is true, it must be proved: (1) That the defendant intentionally killed the victim; (2) At the time of the killing, the defendant was an active participant in a criminal street gang; (3) The members of that gang engaged in or have engaged in a pattern of criminal gang activity; (4) The defendant knew that the gang members engaged in or have engaged in a pattern of criminal activity, and (5) The murder was carried out to further the activities of the criminal street gang."

to which the transferred intent doctrine classically was addressed, namely, the appropriate level of criminal liability for a person who has acted with the intent to kill one or more persons but who instead has directly caused the death of another individual. Unlike *Bland*, the present case requires us to consider the blameworthiness of someone who, acting with the intent to kill, and for the purpose specified by the statute in question, actually has killed another individual. As we made clear in *Bland*, "The mental state required for attempted murder has long differed from that required for murder itself." (*Id.*, at p. 327.)

■  Although there is scant California case law examining the doctrine of transferred intent in the special circumstance context (cf. *People v. Arreola* (1986) 186 Cal.App.3d 1570, 1576 [231 Cal.Rptr. 472] ["it appears that the intent to kill required for a . . . special circumstance need not be the intent to kill the ultimate victim"]), we perceive no sound reason why the doctrine does not apply to the gang-murder special circumstance set forth in section 190.2(a)(22). Nothing in the language of this statute indicates an intent to exempt its provisions from the well-established transferred intent doctrine, and unlike some other special circumstance provisions that identify a particular class of victims (see, e.g., §§ 190.2, subd. (a)(7) ["victim was a peace officer"], 190.2, subd. (a)(8) ["victim was a federal law enforcement officer or agent"], 190.2, subd. (a)(9) ["victim was a firefighter"]), the language of section 190.2(a)(22) does not suggest that the applicability of this special circumstance depends upon the identity or occupation of the victim.

Furthermore, defendant fails to provide any persuasive basis for us to conclude, as a general matter, that the rationale underlying the transferred intent doctrine may not or should not be applied to the interpretation and application of a statutory provision specifying the circumstances that render a defendant eligible for a sentence of life imprisonment without the possibility of parole, or death. (See, e.g., *Bradshaw v. Richey* (2005) 546 U.S. 74 [163 L.Ed.2d 407, 126 S.Ct. 602] [where the defendant set fire to a neighbor's apartment in an attempt to kill his ex-girlfriend and her new boyfriend, but instead killed the neighbor's two-year-old daughter and was convicted of aggravated felony murder and sentenced to death, the United States Supreme Court held that the State of Ohio properly had invoked the doctrine of transferred intent in applying its aggravated-felony-murder statute, thereby rendering the defendant eligible for the death penalty].)

Moreover, application of the transferred intent doctrine to the special circumstance provision set forth in section 190.2(a)(22) is strongly supported by the purpose underlying this special circumstance provision. Section

190.2(a)(22) was enacted as part of Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998, an initiative measure adopted by the electorate at the March 2000 primary election. We have had occasion in past decisions to review at length the findings and declarations that were set forth as part of that ballot proposition (see *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 905–908 [135 Cal.Rptr.2d 30, 69 P.3d 951] (*Robert L.*); *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 574 [117 Cal.Rptr.2d 168, 41 P.3d 3]), and a similarly extensive recitation is unnecessary here. Suffice it to say that the findings and declarations included in Proposition 21 announced: "Gang-related crimes pose a unique threat to the public because of gang members' organization and solidarity. Gang-related felonies should result in severe penalties. *Life without the possibility of parole or death should be available for murderers who kill as part of any gang-related activity.*" (Ballot Pamp., Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 2, subd. (h), p. 119, italics added (Ballot Pamphlet).) The italicized portion of the proposition, addressing in generic terms "murderers who kill as part of any gang-related activity," without any restriction as to the identity of the person actually killed, makes clear that neither the focus of the proposition nor the intent of the electorate was directed to a particular *class* of victim (unlike what we have seen in certain other special circumstance provisions, noted *ante*), but rather to the specific *act* of *gang-related killing*.

The voters intended to address gang-related crime generally. (See *Robert L.*, *supra*, 30 Cal.4th at p. 907 [noting the electorate's intent "to punish all gang crime more severely"].) An interpretation of section 190.2 encompassing *all* victims of gang-related killings is consistent with that intent. One that encompasses only those gang-related killings in which the assailant correctly identifies and kills the targeted individual (instead of, say, a bystander), as defendant urges here, is not. (See also *People v. Arreola*, *supra*, 186 Cal.App.3d 1570, 1576 ["Any deterrent effect capital punishment may have on a prospective killer will not be lost on one who . . . intends to kill, attempts to kill, and in the attempt inadvertently takes the life of one whom he did not intend to kill"].) Gang-related violence poses a threat to gang members and nonmembers, alike; nothing contained in the history of the statute in question suggests that in enacting Proposition 21, the electorate determined that a gang member who acts with the intent to kill should be deemed *less blameworthy* simply because his or her ultimate victim was a bystander or other nonmember rather than the perpetrator's actual, intended victim selected from an opposing gang.[8]

---

[8] At oral argument, defendant's counsel argued that in enacting Proposition 21, the voters were unlikely to have considered the doctrine of transferred intent. We are unpersuaded; it is well settled that voters " 'are presumed to know the law.' " (*Anderson v. Superior Court* (1995) 11 Cal.4th 1152, 1161 [48 Cal.Rptr.2d 766, 907 P.2d 1312], italics omitted.)

We also are unpersuaded by defendant's contention that restricting the applicability of the gang-murder special circumstance to situations where the gang member kills his or her intended target, rather than an unintended victim, "serves the statute's purpose by discouraging the endless cycle of retaliatory gang killings." As we have seen, the general purpose of the statute is to curtail gang-related activity, and the gang-murder special circumstance in particular is directed against "murderers who kill as part of any gang-related activity," not simply against those murderers who kill their intended targets. (Ballot Pamp., *supra*, text of Prop. 21, §2, subd. (h), p. 119.)

Because we conclude, in light of the well-established nature of the transferred intent doctrine and the clear purpose underlying this statutory provision, that the gang-murder special circumstance set forth in section 190.2(a)(22) reasonably must be interpreted to incorporate the doctrine, defendant's reliance upon the so-called rule of lenity lacks merit. That rule clearly is inapplicable in the present circumstances. (See, e.g., *People v. Avery* (2002) 27 Cal.4th 49, 57–58 [115 Cal.Rptr.2d 403, 38 P.3d 1].)

Accordingly, the trial court properly instructed the jury on the transferred intent doctrine in relation to the gang-murder special-circumstance allegation, and the Court of Appeal properly upheld the jury's special circumstance finding under section 190.2(a)(22).

## III.

We next turn to the statutory interpretation issue related to the enhancement provisions of section 12022.53. As noted *ante*, in addition to convicting defendant of the first degree murder of Lori Gonzalez and finding true the special circumstance that defendant intentionally killed Gonzalez while he was an active participant in a criminal street gang and that the murder was carried out to further the activities of the gang (§ 190.2(a)(22)), the jury found that, in committing the murder, defendant personally and intentionally discharged a firearm causing Gonzalez's death within the meaning of section 12022.53(d). The trial court thereafter sentenced defendant to life in prison without the possibility of parole (for the murder of Gonzalez, with the special circumstance finding), and additionally imposed a consecutive sentence of 25 years to life in prison for the enhancement (based upon defendant's use of a firearm in the commission of the murder).

On appeal, defendant contended that the 25-year-to-life enhancement for discharging a firearm must be stricken pursuant to section 12022.53(j), "because another provision of law[,] section 190.2(a)(22)[,] provides for a longer term of imprisonment, namely [life in prison without the possibility of parole], than the 25-year-to-life sentence imposed for this enhancement."

The Court of Appeal found persuasive defendant's position and ordered the enhancement stricken. In reaching its conclusion, the court determined that there was no ambiguity in section 12022.53(j), and that the trial court had erred in imposing the 25-year-to-life enhancement, because the trial court imposed as the base term a "longer term of imprisonment, life without the possibility of parole, pursuant to section 190.2(a)(22)." For the reasons that follow, we conclude that the Court of Appeal erred in this respect.

Section 12022.53(j) provides in relevant part: "For the penalties in this section to apply [that is, the 10-year, 20-year, or 25-year-to-life enhancements set forth in section 12022.53, subdivisions (b), (c), (d), respectively], the existence of any fact required under subdivisions (b), (c), or (d) shall be alleged in the information or indictment and either admitted by the defendant in open court or found to be true by the trier of fact. *When an enhancement specified in this section has been admitted or found to be true, the court shall impose punishment pursuant to this section rather than imposing punishment authorized under any other provision of law, unless another provision of law provides for a greater penalty or a longer term of imprisonment.*" (Italics added.)

When the concluding sentence of section 12022.53(j) is read *in isolation*, its meaning reasonably is susceptible to alternative interpretations: (1) the phrase "unless another provision of law provides for a greater penalty or a longer term of punishment" might refer to another *enhancement* provision that requires an additional punishment greater than the punishment specified by the enhancement provisions contained within section 12022.53 (the People's position, echoing the conclusion reached in *Coker, supra*, 120 Cal.App.4th 581, 588), or (2) the phrase might refer to *any* sentencing provision that provides for a sentence greater than that specified by the applicable 12022.53 enhancement, including a provision that prescribes the sentence for the underlying offense committed by the defendant (defendant's position, echoing the conclusion reached by the Court of Appeal below).

█ To resolve this ambiguity, we rely upon well-settled rules. "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. . . . An interpretation that renders related provisions nugatory must be avoided (*People v. Craft*

(1986) 41 Cal.3d 554, 561 [224 Cal.Rptr. 626, 715 P.2d 585]); each sentence must be read not in isolation but in light of the statutory scheme (*In re Catalano* (1981) 29 Cal.3d 1, 10–11 [171 Cal.Rptr. 667, 623 P.2d 228]); and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed (*Metropolitan Water Dist. v. Adams* (1948) 32 Cal.2d 620, 630–631 [197 P.2d 543])." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; see also *Robert L.*, *supra*, 30 Cal.4th 894, 903 [" 'Statutory language should not be interpreted in isolation, but must be construed in the context of the entire statute of which it is a part, in order to achieve harmony among the parts' "].)

■ Defendant's contention that section 12022.53 properly should be interpreted to refer to *any provision* that provides for a greater punishment fails to comport with the foregoing rules of statutory construction. As we explained in *People v. Garcia* (2002) 28 Cal.4th 1166, 1166 [124 Cal.Rptr.2d 464, 52 P.3d 648] (*Garcia*): "The legislative intent behind section 12022.53 is clear: 'The Legislature finds and declares that substantially longer prison sentences must be imposed on felons who use firearms in the commission of their crimes, in order to protect our citizens and to deter violent crime.' " (*Id.*, at p. 1172, quoting Stats. 1997, ch. 503, § 1.) To effectuate this intent, section 12022.53 first sets out, in subdivision (a), a list of felonies to which the statute applies, and then provides three potential sentence enhancements that apply to a defendant who uses a firearm in the commission of one of the enumerated felonies, as follows: subdivision (b) provides a *10-year* enhancement for any person who "personally uses a firearm" in the commission of such a felony; subdivision (c) provides a *20-year* enhancement for any person who "personally and intentionally discharges a firearm" in the commission of such a felony; and subdivision (d) provides a *25-year-to-life* enhancement for any person who "personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death, to any person other than an accomplice" in the commission of such a felony. Subdivisions (b), (c), and (d) provide that the enhancement prescribed in each subdivision shall be applied "[n]otwithstanding any other provision of law" and as "an additional and consecutive term of imprisonment." (§ 12022.53, subds. (b), (c), (d) respectively; see also *Chiu*, *supra*, 113 Cal.App.4th at p. 1263 ["The statute makes clear that these enhancements are to be added to the base term for the crime"].)

Defendant's proposed interpretation of section 12022.53(j) is incompatible with the provisions of section 12022.53 as a whole. Under defendant's proposed interpretation, subdivision (j) would preclude the imposition of the mandatory consecutive sentence enhancements prescribed by subdivisions (b),

(c), and (d) whenever the sentence for the underlying felony committed by the defendant is greater than the otherwise applicable section 12022.53 enhancement. As we shall explain, that interpretation would preclude application of the enhancements set forth in section 12022.53 to many of the felonies to which the statute explicitly is intended to apply, and also would lead to anomalous results in other circumstances.

■ The list of designated felonies set forth in section 12022.53, subdivision (a), includes one felony that is punishable *only* by a term of life in prison without the possibility of parole: kidnapping for ransom in which the victim "suffers death or bodily harm, or is intentionally confined in a manner which exposes [the victim] to a substantial likelihood of death" (§ 209, subd. (a)). (§ 12022.53, subd. (a)(3).) Section 12022.53 also specifically applies to the crime of assault with a deadly weapon by a prisoner serving a life sentence (§ 12022.53, subd. (a)(14)), a crime that is punishable by death or life in prison without possibility of parole if the victim dies within one year and one day after the assault. (§ 4500.) Additionally, section 12022.53, subdivision (a), includes a "catchall" provision specifying that the statute is applicable to "[a]*ny* felony punishable by death or imprisonment in the state prison for life." (§ 12022.53, subd. (a)(17), italics added.) These statutory provisions make clear that the Legislature intended that the enhancements set forth in section 12022.53 be added to a defendant's sentence when the underlying offense is punishable by death or by life imprisonment without the possibility of parole. Thus, the interpretation advanced by defendant would render the statute inapplicable to certain offenses to which the statute definitely was intended to apply.

Furthermore, even with regard to those felonies listed in section 12022.53, subdivision (a), whose base terms are not longer than *all* of the enhancements embodied in that provision, the adoption of defendant's proposed interpretation of section 12022.53(j) would lead to anomalous results. For example, one of the felonies to which the section 12022.53 enhancements apply is the offense of assault with a firearm on a peace officer or firefighter in violation of section 245, subdivision (d). Under section 245, subdivision (d)(3), the sentence to be imposed upon a person who commits an assault on a peace officer with a machine gun is a prison term of six, nine, or 12 years. Under defendant's interpretation of section 12022.53(j), a person who personally used the firearm in the course of the felony and who would be subject to a 10-year enhancement under section 12022.53, subdivision (b), could have his sentence increased by that enhancement if he or she were sentenced to the *lower* (six-year) or *middle* (nine-year) term for the underlying offense, but the convicted felon would escape the enhancement, and receive a shorter total sentence, if the felon's conduct and the accompanying circumstances demonstrated culpability sufficient to justify an *upper* (12-year) term on the underlying felony. Such an anomalous consequence resulting from defendant's

proposed interpretation of section 12022.53(j) is illogical and contrary to the purpose of the statute (see *Garcia, supra,* 28 Cal.4th at p. 1172); that provision instead must be interpreted to require that a section 12022.53 enhancement be imposed unless the defendant is subject to a different *enhancement* provision that specifies a longer term. (See, e.g., *People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420] [" '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend' "]; *People v. Loeun* (1997) 17 Cal.4th 1, 9 [69 Cal.Rptr.2d 776, 947 P.2d 1313] [" 'Interpretations that lead to absurd results . . . are to be avoided' "].)

Although defendant contends it would be unreasonable to assume that the Legislature intended that the section 12022.53 enhancements would be imposed on a defendant who is sentenced to life imprisonment without the possibility of parole, because the enhancement would have no practical effect, the words employed in section 12022.53 defeat defendant's argument: the statute states specifically that it is intended to apply to "any felony punishable by death or imprisonment . . . for life." (§ 12022.53, subd. (a)(17); see *Chiu, supra,* 113 Cal.App.4th at p. 1264.) Moreover, section 669 makes it clear that the Legislature has determined that, as a general matter, enhancements properly may be imposed to run consecutively to a life sentence. (§ 669 ["Life sentences, whether with or without the possibility of parole, may be imposed to run consecutively with one another, with any term imposed for applicable enhancements, or with any other term of imprisonment for a felony conviction"]; see also *People v. Felix* (2000) 22 Cal.4th 651, 655–656 [94 Cal.Rptr.2d 54, 995 P.2d 186] [upholding imposition of the full term provided for enhancements that are added to indeterminate terms].)[9]

In light of the foregoing, we conclude that the trial court properly imposed a sentence enhancement of 25 years to life in prison under section 12022.53(d), in addition to defendant's sentence of life in prison without the possibility of parole, for the murder of Lori Gonzalez.

---

[9] We also observe that an individual who is sentenced to life imprisonment without the possibility of parole conceivably could have his or her sentence commuted to life imprisonment with the possibility of parole or an even lesser sentence. (Cal. Const., art. V, § 8; see also *People v. Ward* (2005) 36 Cal.4th 186, 220 [30 Cal.Rptr.3d 464, 114 P.3d 717] ["The Governor may ameliorate any sentence by use of the commutation . . . power . . ."]; *People v. Zimmerman* (1984) 36 Cal.3d 154, 160 [202 Cal.Rptr. 826, 680 P.2d 776] ["[I]n the decade from 1969 to 1979 the Governor commuted the sentences of . . . four persons from terms of life without parole to terms of life with parole."].) Under such circumstances, imposition of a sentence enhancement of 25 years to life in prison could have a practical effect on the length of the sentence served by the individual.

## IV.

The judgment rendered by the Court of Appeal is reversed insofar as it set aside the 25-year-to-life enhancement imposed by the trial court pursuant to section 12022.53(d), and is affirmed in all other respects.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

On April 12, 2006, the opinion was modified to read as printed above.