Filed 1/31/14  P. v. Gonzalez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JULIAN GONZALEZ,<br><br>    Defendant and Appellant. | F065138<br><br>(Super. Ct. No. VCF241993A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Darryl B. Ferguson, Judge.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Together with fellow Norteno gang member Jacob Robles, appellant Julian Gonzalez agreed to kill Felix Estrella at the request of a gang leader.  Unfortunately,

Gonzalez and Robles mistook John Hernandez as their quarry and killed him. A woman, Ashley Tyson, was shot in the abdomen and seriously wounded.

Gonzalez and Robles were charged with multiple crimes in connection with this gang-related shooting. Gonzalez was convicted after jury trial of murder (count 1; Pen. Code,[1] § 187, subd. (a)) and shooting at an inhabited dwelling (count 3; § 246). He was acquitted of attempting to murder Ashley Tyson (count 2). Gonzalez was sentenced on count 1 to life in prison without the possibility of parole plus two consecutive firearm enhancement terms of 25 years to life each pursuant to section 12022.53, subdivisions (d) and (e)(1). Robles subsequently pled guilty to all counts and was sentenced to life imprisonment. Both men were ordered to pay an $11,191 victim restitution fine.

Gonzalez challenges his sentence on four grounds. First, he claims the restriction set forth in section 12022.53, subdivision (e)(2) precludes imposition of a firearm enhancement on count 1. Second, Gonzalez argues that even if the court was authorized to add one firearm enhancement to his base term on count 1, imposition of a second firearm enhancement was barred under section 12022.53, subdivision (f). The first argument has no merit but the latter contention is convincing. Next, Gonzalez argues that he and Robles should be held jointly and severally liable for the victim restitution fine and that the trial court erred by retaining jurisdiction over future restitution claims. We agree that codefendants should be held jointly and severally liable for the restitution fine but uphold the reservation of jurisdiction. The judgment will be modified to strike one of the section 12022.53 enhancements and to amend the restitution order. As so modified, the judgment will be affirmed.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Tulare County District Attorney charged Gonzalez and Robles by amended information with the murder of John Hernandez (count 1), attempted murder of Ashley

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

Tyson (count 2), and shooting at an inhabited dwelling (count 3). A number of special allegations accompanied each of the three counts.

Gonzalez was separately tried in May 2012. The prosecution's evidence established that the underlying incident was gang-related and that both victims were innocent bystanders. An audio recording of a confession made by Gonzalez to police regarding his involvement in the shooting was played for the jury.

Gonzalez's interview with homicide detectives described a murder plot excogitated by higher ranking members of the Norteno criminal street gang and relayed to him directly by a man named Joe Dominguez, aka "Heavy D." The target was a former member of the gang known as "Cody," later identified by police as Felix Estrella. Heavy D met with Gonzalez on May 19, 2010, provided a description of Felix Estrella and the location where he could be found, and told Gonzalez to enlist the help of fellow gang member Jacob Robles. Heavy D also furnished Gonzalez with two firearms. The shooting occurred later that evening at approximately 11:00 p.m.

The gunmen mistook John Hernandez for the man who had been described to them as "Cody" and shot him while he was outside of his apartment building. Three .22 caliber bullets were removed from Mr. Hernandez's body during an autopsy. Ashley Tyson, who had been near Mr. Hernandez at the time, sustained serious injuries from the gunfire. Surgeons removed a .32 caliber bullet from her stomach and turned it over to the authorities.

Police were unable to locate the firearms used in the crime. According to Gonzalez, he and Robles had been given an automatic pistol and a revolver, but promptly returned the weapons to Heavy D once the shooting was over. Although he was certain that Robles fired the revolver and he fired the automatic, Gonzalez did not know the

3.

caliber of the guns or the type of ammunition that was used. Heavy D allegedly informed him that both guns were loaded with .22 or .25 caliber ammunition.[2]

There were no eyewitness identifications of the gunmen. Although she claimed to have no recollection of the events at trial, Ashley Tyson had been adamant in her initial conversations with police that there was only one shooter. She maintained this belief even after police informed her that two different calibers of bullets had been used. She hypothesized that the shooter "must have switched guns."

Appellant testified at trial in his own defense, admitting his past membership in a subset of the Nortenos called North Side Visa and explaining how he and Robles had been ordered to kill Felix Estrella. When it came time to carry out the assassination, Gonzalez had doubts about whether he and Robles had located the right person. Gonzalez said that Robles fired the shots that struck the victims and he merely discharged his gun into the air.

The jury acquitted Gonzalez of attempted murder under count 2. He was convicted of first degree murder as alleged in count 1 and a true finding was returned on the special circumstance allegation that the crime was intentionally committed while he was an active participant in a criminal street gang to further the gang's activities (§ 190.2, subd. (a)(22)). It was also determined that Gonzalez personally used and intentionally discharged a firearm (§ 12022.53, subds. (b) & (c)), that a principal in the offense personally and intentionally discharged a firearm which caused death and great bodily injury to the respective victims (§ 12022.53, subds. (d) & (e)(1), and that the offense was committed at the direction of, for the benefit of, or in association with a criminal street

---

[2] According to the prosecution's forensic firearms examiner, the .32 caliber bullet removed from Ashley Tyson's body could not have been fired from a .22 caliber firearm. As noted, however, the guns used in the shooting were never recovered. Police later found a .32 casing near the victims' apartment building, but could not confirm that it matched the bullet which struck Ms. Tyson.

gang (§ 186.22, subd. (b)(1)). The jury found not true the allegation that Gonzalez caused death and/or injury by personally and intentionally discharging a firearm within the meaning of section 12022.53, subdivision (d). The same findings were made in conjunction with the guilty verdict on count 3.

The trial court sentenced Gonzalez to life in prison without the possibility of parole on count 1, plus two consecutive terms of 25 years to life for the firearm enhancement findings pursuant to section 12022.53, subdivisions (d) and (e)(1). The middle term of five years was imposed for count 3 and stayed pursuant to section 654. The firearm enhancements attached to count 3 were also stayed. In addition, the court imposed a victim restitution fine of $11,191.

Several months later, Gonzalez's codefendant, Jacob Robles, pled guilty to counts 1, 2, and 3. Robles was sentenced to life in prison with consecutive enhancement terms of 25 years to life.

## DISCUSSION

### I. Section 12022.53, Subdivision (e)(2), Does Not Bar Imposition of a Firearm Enhancement.

Gonzalez does not contest the sentence of life in prison without the possibility of parole, but claims the trial court was precluded from imposing an additional firearm enhancement term under count 1 because of the restriction set forth in section 12022.53, subdivision (e)(2). We are not convinced.

The base term of Gonzalez's sentence resulted from the jury's true finding on a special circumstance allegation under section 190.2, subdivision (a)(22). This statute provides for punishment by "death or imprisonment in the state prison for life without the possibility of parole" if "[t]he defendant intentionally killed the victim while the defendant was an active participant in a criminal street gang . . . and the murder was carried out to further the activities of the criminal street gang." (*Ibid*.) If a gang-related murder involves the use of a firearm, further imposition of an enhancement under section

5.

12022.53 may be warranted depending on the circumstances of the case. (*People v. Shabazz* (2006) 38 Cal.4th 55, 70.)

In *People v. Brookfield* (2009) 47 Cal.4th 583 (*Brookfield*), the California Supreme Court explained how the relevant statutory scheme is applied. "Section 12022.53 imposes increasingly severe sentence enhancements for firearm use in the commission of certain felonies set forth in subdivision (a) of that section. Among those felonies is '[a]ny felony punishable by death or imprisonment in the state prison for life.' (§ 12022.53, subd. (a)(17)[.]" (*Brookfield*, *supra*, 47 Cal.4th at p. 589, italics omitted.) "[A] defendant's personal use of a firearm in the commission of a specified felony results in an additional 10-year prison term (§ 12022.53, subd. (b)), personal and intentional discharge of a firearm leads to an additional 20 years (*id*., subd. (c)), while personal and intentional discharge of a firearm resulting in death or great bodily injury to a person other than an accomplice adds a prison term of 25 years to life (*id*., subd. (d)) to the sentence for the underlying crime." (*Ibid*., italics omitted.)

Gonzalez was subject to a consecutive term of imprisonment in addition to life without parole by operation of section 12022.53, subdivision (e)(1). The provision states, "The enhancements provided in this section shall apply to any person who is a principal in the commission of an offense if both of the following are pled and proved: [¶] (A) The person violated subdivision (b) of Section 186.22 [felony committed for the benefit of, at the direction of, or in association with any criminal street gang]. [¶] (B) Any principal in the offense committed any act specified in subdivision (b), (c), or (d)." The jury's findings as to count 1 satisfied both prerequisites.

Gonzalez claims the enhancement term of 25 years to life was not applicable to him because the jury found he did not personally fire the gun that killed John Hernandez. This argument rests upon the distinction between the jury's conclusion that "a principal in the offense" personally and intentionally discharged a firearm within the meaning of section 12022.53, subdivisions (d) and (e)(1), and its finding that the principal in question

6.

was not Gonzalez. His position is untenable because it ignores the very statutory language upon which he relies, i.e., section 12022.53, subdivision (e)(2).

The full text of section 12022.53, subdivision (e)(2) is as follows: "An enhancement for participation in a criminal street gang pursuant to Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1 shall not be imposed on a person in addition to an enhancement imposed pursuant to this subdivision, unless the person personally used or personally discharged a firearm in the commission of the offense."

Gonzalez's gang participation was established for purposes of section 186.22, subdivision (b) and thus triggered the application of section 12022.53, subdivision (e)(1). However, the trial court's sentence of life without the possibility of parole was based upon section 190.2, subdivision (a)(22), not section 186.22 or any other provision contained in "Chapter 11 of Title 7" of the Penal Code. The Attorney General aptly points out that section 190.2 falls within chapter 1 of title 8 of the code. As such, the limitation set forth in section 12022.53, subdivision (e)(2) does not apply.

The other flaw in appellant's reasoning is his failure to recognize that the statutory scheme imposes vicarious liability for the actions of a fellow gang member who engages in conduct specified under section 12022.53, subdivision (d). (§ 2022.53, subd. (e)(1); *People v. Garcia* (2002) 28 Cal.4th 1166, 1171; see also, *Brookfield*, *supra*, 47 Cal.4th at p. 590.) This is why the applicable term for the firearm enhancement was 25 years to life. The exemption in section 12022.53, subdivision (e)(2) is of no benefit to Gonzalez because it only applies when there are no findings of personal firearm use vis-à-vis the defendant who is being sentenced. The jury's belief that Gonzalez did not fire the gun that killed John Hernandez does not negate the impact of its conclusion that Gonzalez personally used and discharged a firearm in the course of the crime.

We disagree with the Gonzalez's argument that *Brookfield*, *supra*, somehow alters the foregoing analysis. The *Brookfield* case involved an accomplice to a gang-related shooting who did not personally use or discharge a firearm during the commission of the

7.

offense.  (*Brookfield, supra,* 47 Cal.4th at p. 590.)  Tasked with interpreting the language of section 12022.53, subdivision (e)(2), the California Supreme Court confirmed that dual punishment under sections 186.22 and 12022.53 cannot be imposed in the absence of a finding that the defendant personally used and/or intentionally discharged a firearm within the meaning of subdivisions (b), (c), or (d) of section 12022.53.  (*Brookfield, supra,* 47 Cal.4th at pp. 586, 593-594.)

Unlike the appellant in *Brookfield*, Gonzalez personally used and intentionally discharged a firearm while committing the crime for which he was convicted. Furthermore, his sentence under count 1 did not include "[a]n enhancement for participation in a criminal street gang pursuant to Chapter 11 (commencing with Section 186.20) of Title 7" of the Penal Code.  (§ 12022.53, subd. (e)(2).)

For all of these reasons, we conclude the trial court properly imposed a consecutive prison sentence of 25 years to life in addition to the base term of life without the possibility of parole.

## II.    The Second Firearm Enhancement Attached to Count 1 Must Be Stricken.

Gonzalez argues that imposition of two consecutive prison terms of 25 years to life violated subdivision (f) of section 12022.53.  The subdivision states, in pertinent part, "Only one additional term of imprisonment under this section shall be imposed per person for each crime."  (§ 12022.53, subd. (f).)  The Attorney General argues the phrase "per person" refers to the number of victims involved in the offense.  This issue was squarely addressed by the Third District in *People v. Smart* (2006) 145 Cal.App.4th 1216, 1223 (*Smart*), which held that the word "person" means "defendant."  (*Id*. at p. 1223.)

In *Smart*, the jury received verdict forms delineating separate section 12022.53, subdivision (d) enhancement allegations for two victims on a singularly charged crime. (*Smart, supra*, 145 Cal.App.4th at p. 1225.)  The appellate court found that such a procedure will not result in further justice for multiple injured parties.  "[A] prosecutor may easily account for such increased culpability by charging the number of offenses in

line with the number of victims and alleging the appropriate section 12022.53 enhancement as to each offense." (*Id*. at p. 1226.) Furthermore, "the cases that have imposed multiple enhancements under section 12022.53(d) on one defendant have aligned each enhancement with a separately punishable (charged and convicted) qualifying offense." (*Ibid*.) Since the defendants in *Smart* were convicted of only one qualifying offense, the court struck one of the two enhancements. (*Id*. at pp. 1126-1127.)

Here, count 1 charged Gonzalez with the murder of John Hernandez. Yet, the jury was presented with a verdict form on count 1 containing two sets of section 12022.53 enhancement allegations; one for John Hernandez and the other for the surviving victim, Ashley Tyson. We have previously expressed the view that "[t]he first sentence of [section 12022.53,] subdivision (f) presents no ambiguity as to the Legislature's intent to apply a limitation [of] one enhancement per crime." (*People v. Perez* (2001) 86 Cal.App.4th 675, 682.) In light of the holding in *Smart*, the second firearm enhancement that was imposed under count 1 in connection with Ashley Tyson must be stricken.

## III.  The Judgment Must Be Amended to Reflect Joint and Several Liability for Victim Restitution.

### A.  Factual background.

Gonzalez was sentenced on June 12, 2012. The trial court imposed various fines and fees, including victim restitution in the amount of $11,191, plus interest at the rate of 10 percent per annum. The abstract of judgment, dated June 18, 2012, reflects the dollar amount of the fine and states, "Restitution to victim A.T., and the family of J.H., remain[s] open[.] Restitution to the Victim's Compensation Government Claims Board remains open."

9.

Robles also was ordered to pay victim restitution in the amount of $11,191. His abstract of judgment is dated October 25, 2012 and notably contains the following order: "Restitution shall be paid jointly and severally with co-defendant, Julian Gonzalez."**3**

**B.      Robles and Gonzalez are jointly and severally liable for victim restitution.**

Gonzalez argues that the sentencing order must be amended to reflect that he is jointly and severally liable with Robles for the victim restitution fine. He posits that the only reason such an order was not made at the time of his sentencing was because the charges against Robles had not yet been adjudicated. The Attorney General concedes this issue, subject to the argument that it was forfeited by Gonzalez's failure to raise the matter at the sentencing hearing. Gonzalez submits that such an objection and/or request would have been futile because Robles had not yet been convicted and was thus entitled to the presumption of innocence.

Under the unique facts of this case, we find that it is appropriate to consider the merits of appellant's claim. In doing so, we accept the concession properly made by the Attorney General that, "[f]rom a review of both appellant's and his codefendant's abstracts of judgment, it appears that the lower court intended for appellant to be jointly and severally liable for the restitution fine."

Trial courts have authority to make the restitution obligations of multiple codefendants joint and several. (§ 1202.4, subd. (f); *People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1535.) The imposition of joint and several liability is not mandatory, but is consistent with each defendant's obligation to reimburse the victims for their losses, may increase the likelihood that each victim will be fully compensated, and safeguards against double recovery. (See *People v. Madrana* (1997) 55 Cal.App.4th 1044, 1049-1051.) Robles and Gonzalez were both convicted of murdering John

---

**3** Robles and Gonzalez were sentenced by the same judge.

Hernandez and it is apparent from the record that the trial court intended to hold them jointly liable for victim restitution. Therefore, it is appropriate to amend the sentencing order to expressly reflect that Gonzalez is jointly and severally liable with Robles for the victim restitution fine.

## IV. The Trial Court Did Not Err by Retaining Jurisdiction Over Future Claims of Restitution by Ashley Tyson.

Given his acquittal on the charge of attempted murder, Gonzalez contends the trial court exceeded its authority by ordering him to pay restitution to Ashley Tyson and by retaining jurisdiction over any future claims for restitution presented by her. We disagree. "[I]n the nonprobation context, a restitution order is not authorized where the defendant's only relationship to the victim's loss is by way of a crime of which the defendant was acquitted." (*People v. Percelle* (2005) 126 Cal.App.4th 164, 180.) Here, the relationship between Gonzalez's criminal behavior and the injuries sustained by Ashley Tyson was established by the verdict on count 3, which included true findings on allegations made pursuant to section 12022.53, subdivision (d).

"[A] victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." (§ 1202.4, subd. (a)(1).) The jury convicted Gonzalez of shooting at an inhabited dwelling and found Ashley Tyson sustained great bodily injury as a result of the offense. Therefore, the restitution order was legally authorized and appropriate.

### DISPOSITION

The judgment is modified, as follows: (1) the section 12022.53, subdivision (d) enhancement attached to count 1 in relation to victim Ashley Tyson is stricken; and (2) Gonzalez and Robles are jointly and severally liable for victim restitution. The judgment is affirmed as so modified. The superior court is directed to prepare an

amended abstract of judgment reflecting these modifications and to transmit a certified copy of it to the parties and appropriate authorities.

_____
Levy, Acting P.J.

WE CONCUR:


_____
Kane, J.


_____
Poochigian, J.