Filed 8/20/20  P. v. Mejia CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B302951 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA329116-04) |
| v. | |
| JUVENAL CARDENAS MEJIA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Affirmed.

Marta Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Charles S. Lee and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Juvenal Cardenas Mejia, convicted of the first degree murder of a 23-day-old infant in September 2007, as well as attempted premeditated murder and several related crimes, appeals the denial of his petition for resentencing pursuant to Penal Code section 1170.95.[1]  Because the record of conviction indisputably shows that Mejia is ineligible for resentencing, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Mejia's Conviction for the Murder of Infant Luis Garcia*

As summarized in our opinion affirming the judgment of conviction in Mejia's case (*People v. Mejia* (May 26, 2015, B251845) [nonpub. opn.]), Mejia was hired as a "paisa"[2] by the Columbia Lil Cycos (CLC) clique of the 18th Street criminal street gang to collect payments from unlicensed street vendors in the area near MacArthur Park.  Francisco Clemente sold electronic items in the neighborhood and was approached on multiple occasions by gang members or associates who demanded money for the right to sell on the street.

Several months before the September 2007 shooting, six men who identified themselves as 18th Street gang members told Clemente he had to pay to sell his merchandise or they would beat him up.  When Clemente pulled out a knife, the men fled.  In mid-August 2007 Clemente moved a few blocks away to

_____

[1]     Statutory references are to this code.

[2]     "Paisa" is a slang term, shortened from the Spanish word "paisano."  In this context it referred to someone who performs work for a gang but is not a member of the gang.

2

avoid the threats and demands, but Mejia and another gang associate insisted that Clemente pay them at his new location. On several occasions Clemente paid to avoid a beating; but, when he informed Mejia he did not have enough money, Mejia told him to move or the people who had previously threatened him would come and "send him to hell."

A week or two before the shooting, a man Clemente identified as Sergio Pantoja, the leader of the CLC clique, similarly threatened he would "send [Clemente] to hell" if he did not leave the street. Clemente refused to leave. Later, Mejia told Edgar Hernandez, the CLC clique member who had hired him to collect taxes from vendors, that a vendor would be shot for disrespecting Pantoja. Shortly before the shooting, Mejia was overheard telling another paisa, "We're going to fix it later," when the paisa complained that Clemente was giving him trouble about payments.

On the evening of September 15, 2007 Mejia and several gang members gathered near Clemente's location to be instructed on the plans for the shooting. A young gang member named Rusty Macedo was assigned to be the shooter and was given a gun. Others were directed to watch for the police, and Mejia was told to point out Clemente for Macedo. As Macedo would later explain, "[E]verybody knew what was going to be done before I shot the vendor. They knew the vendor was going to get shot, you know." The men took their positions as instructed. Mejia twice walked with Macedo past Clemente's position and pointed him out. They then walked into a nearby video store. While Mejia stayed in the store, Macedo walked out of the store toward Clemente, who was standing with his girlfriend and a friend of hers, as well as the friend's baby. From a distance of seven or

eight feet Macedo fired several times, aiming at Clemente as he fell to the ground. Clemente, who was shot four or five times, survived the attack. The baby, Luis Garcia, was shot in the chest and died.

Mejia was arrested in Mexico and returned to the United States in February 2012. Following a jury trial, he was convicted of the first degree premeditated murder of Garcia; the attempted willful, deliberate and premeditated murder of Clemente; two counts of assault with a semiautomatic weapon; attempted extortion; conspiracy to commit extortion; and conspiracy to commit murder. The jury found true not only the special circumstance allegation Mejia had intentionally killed Garcia while an active participant in a criminal street gang and the murder was carried out to further the activities of the gang (§ 190.2, subds. (a)(22), (c)) but also, as to the murder and attempted murder counts, that a principal had intentionally discharged a firearm causing great bodily injury or death and, as to all counts, that the crimes had been committed to benefit a criminal street gang.

Mejia was sentenced to life without the possibility of parole plus 25 years to life for the firearm-use enhancement for the murder of infant Garcia; plus a consecutive indeterminate life term plus 25 years to life for the attempted premeditated murder of Clemente and the related firearm-use enhancement; plus a consecutive indeterminate life term for conspiracy to commit extortion; and consecutive aggregate determinate terms of 17 years eight months for the two aggravated assault convictions with gang enhancements.

We affirmed the judgment on appeal, rejecting Mejia's arguments the trial court had erred in refusing to instruct on

4

duress as an affirmative defense and had committed other instructional errors.  (*People v. Mejia, supra,* B251845.)

2.  *Consideration of the Natural and Probable Consequences Doctrine on Appeal*

While Mejia's appeal was pending, the Supreme Court decided *People v. Chiu* (2014) 59 Cal.4th 155, holding a defendant may not be convicted of aiding and abetting first degree premeditated murder under the natural and probable consequences doctrine.  In supplemental briefing Mejia argued his first degree murder conviction and attempted premeditated murder conviction must be reversed because the trial court had instructed, and the prosecutor had argued, Mejia could be found guilty of both crimes under this theory.

We rejected Mejia's argument, explaining, "Although the jury here was instructed under the natural and probable consequences doctrine, the verdicts are entirely incompatible with a conclusion the jury relied on that doctrine to convict Mejia of premeditated first degree murder and attempted deliberate and premeditated murder.  The jury also found true the gang-murder special circumstance under section 190.2, subdivision (a)(22), which authorizes a penalty of death or life imprisonment without the possibility of parole if '[t]he defendant intentionally killed the victim while . . . an active participant in a criminal street gang, . . . and the murder was carried out to further the activities of the criminal street gang.'  CALJIC No. 8.80.1 expressly told the jury, 'If you find that a defendant was not the actual killer of a human being, you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, counseled, commanded, or assisted any actor in

the commission of the murder in the first degree.'  The jury's finding Mejia aided and abetted the shooter with the intent to kill (rather than merely assault) Clemente is dispositive of his claim the jury could have convicted him of first degree murder and attempted premeditated murder only because it believed those crimes were the natural and probable consequence of an assault." (*People v. Mejia, supra*, B251845.)

      3. *Senate Bill No. 1437 and Mejia's Petition for Resentencing*

         a. *Senate Bill No. 1437 and the section 1170.95 petition procedure*

Senate Bill No. 1437 (2017- 2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437), effective January 1, 2019, amended the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder through amendments to sections 188 and 189.  New section 188, subdivision (a)(3), provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."

New section 189, subdivision (e), in turn, provides with respect to a participant in the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), in which a death occurs—that is, as to those crimes that provide the basis for the charge of first degree felony murder—that an individual is liable for murder "only if one of the following is proven:  [¶] (1) The person was the actual killer.  [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first

6

degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill 1437 also permits, through new section 1170.95, an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. The petition must include a declaration by the petitioner that he or she is eligible for relief under this section, the superior court case number and year of the petitioner's conviction and a statement whether the petitioner requests the appointment of counsel. (§ 1170.95, subd. (b)(1); see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 326-327, review granted Mar. 18, 2020, S260493 (*Verdugo*).)[3]

If the petition contains all required information, section 1170.95, subdivision (c), prescribes a two-step process for the court to determine if an order to show cause should issue: "'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has

---

[3]    The Supreme Court in *Verdugo*, *supra*, S260493 ordered briefing deferred pending its disposition of *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted March 18, 2020, S260598. The Court limited briefing and argument in *People v. Lewis* to the following issues:  "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95?  (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)?"

requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.'" (*Verdugo*, *supra*, 44 Cal.App.5th at p. 327.)

Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1); see *Verdugo*, *supra*, 44 Cal.App.5th at p. 327.) At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).) The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens. (See *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, review granted Mar. 18, 2020, S260598.)

> b. *Mejia's section 1170.95 petition*

On January 4, 2019 Mejia petitioned for resentencing under newly enacted section 1170.95, asking the court to vacate his murder conviction and to resentence him on the remaining counts. He provided a declaration stating he had been charged with, and convicted of, murder in a prosecution that proceeded under a theory of felony murder or murder under the natural and probable consequences doctrine and averring that his conviction for murder was invalid due to the recently effective changes to sections 188 and 189. He also requested appointment of counsel.

8

4. *The Superior Court Proceedings on Mejia's Petition*

Counsel was appointed to represent Mejia. On March 4, 2019 the People filed a memorandum in opposition to resentencing that described the factual background of Mejia's murder conviction, including the jury's special circumstance finding, and argued section 1170.95 was unconstitutional. The memorandum attached a copy of this court's opinion affirming the judgment in Mejia's direct appeal.

At the May 30, 2019 hearing on the petition, Mejia's counsel stated he had been in trial when appointed and had not yet had an opportunity to review the People's opposition memorandum. He noted that he and the prosecutor had agreed to a continued hearing date of July 17, 2019 and said he would file his reply by July 5, 2019. At this point, however, Mejia's counsel said he had a question as to procedure: "The courts are doing things differently. Under 1170.95 the court is required to make a prima facie [finding]. Some judges do that at the outset. Some judges wait to see my response. What is the court's pleasure in handling that?" The court responded it had done it both ways and continued, "I don't want to foreclose your opportunity to contest what [the prosecutor] is saying. By the same token, it appears to me, given what he's saying, that Mr. Mejia probably doesn't qualify for relief under the statute."

The court (a different judge from the one who had tried the case) acknowledged there had been a natural and probable consequences instruction at trial and then observed, "While I understand that the natural/probable consequences instruction was given, according to what [the prosecutor] has stated . . . the findings that the jury made required that they find intent to kill." Counsel replied, "If there's any doubt in the court's mind, I would

9

ask the court to allow me to do my job.  But if the court is telling me it doesn't have a real doubt at all as to whether he qualifies, then the court is well within its rights, as a prima facie basis, to deny Mr. Mejia his–his motion.  I just need to get directions from the court what you want me to do."  The court then denied the petition "because it appears to me that a prima facie case can't be made in this instance of eligibility for relief under the statute.  Because the jury finding negates any ambiguity with respect to the theories under which the defendant was tried."  The court did not rule on the People's argument section 1170.95 is unconstitutional.

## DISCUSSION

1. *The Superior Court Correctly Determined Mejia Is Ineligible for Resentencing as a Matter of Law*

Mejia does not dispute, nor could he, that the jury's special circumstance finding under section 190.2, subdivisions (a)(22) and (c), required it to find beyond a reasonable doubt that he had acted with the intent to kill–express malice–when he directly aided and abetted Macedo's shooting that, although targeting Clemente, killed the infant.[4]  As discussed, that was the basis for

---

[4]     Section 190.2, subdivision (a)(22), applies to the actual killer.  As the court instructed at Mejia's trial, however, the special circumstance also applies to an aider and abettor who acts with the intent to kill.  Section 190.2, subdivision (c), provides, "Every person, not the actual killer, who, with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree shall be punished by death or imprisonment in the state prison for life without the possibility of parole if one or more of the special circumstances enumerated in subdivision (a) has been found to be true under Section 190.4."  And in *People v. Shabazz*

10

our rejection of Mejia's argument for reversal of his first degree murder conviction under *People v. Chiu, supra*, 59 Cal.4th 155: Although instructed with the natural and probable consequences doctrine, the jury, because it found true the special circumstance allegation, necessarily found Mejia guilty as a direct aider and abettor who had acted with the intent to kill.

Rather than argue the superior court erred in ruling the jury verdict meant he was ineligible for resentencing as a matter of law, Mejia contends it was error for the court to make that determination before permitting his counsel to file a reply brief. We rejected an identical argument in *Verdugo, supra*, 44 Cal.App.5th 320.

As we explained, after receiving a facially sufficient petition, the superior court may examine the readily available portions of the record of conviction, including any appellate opinion affirming the conviction, to determine whether the petitioner has made a prima facie showing that he or she could not be convicted of first or second degree murder following the changes made to sections 188 and 189 and thus falls within the provisions of section 1170.95. (*Verdugo, supra*, 44 Cal.App.5th at pp. 329-330, 332.) We cautioned, however, because at this stage the court is only evaluating whether there is a prima facie

_____

(2006) 38 Cal.4th 55, which we discussed at length in our opinion affirming Mejia's first degree murder conviction, the Supreme Court held "a finding of the special circumstance set forth in section 190.2(a)(22) may be upheld when a defendant, while an active participant in a criminal street gang and in furtherance of that gang's activities, has performed an act with an intent to kill that resulted in the killing of any individual," even though the defendant who fired the gun missed the intended victim and killed another person. (*Id.* at p. 59.)

11

showing the petitioner falls within the provisions of the statute, if the petitioner's ineligibility for resentencing under section 1170.95 is not established as a matter of law by the record of conviction, the court must appoint counsel if requested; direct the prosecutor to file a response to the petition; permit the petitioner to file a reply; and then determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief. (*Verdugo*, at p. 330.)

Although counsel had been appointed for Mejia and the prosecutor had filed a memorandum opposing resentencing, with the consent of Mejia's attorney, who was present at the hearing, the court performed the preliminary screening for eligibility authorized by *Verdugo* and correctly concluded Mejia was ineligible for relief under section 1170.95 as a matter of law.[5] There was no error. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 330;

---

[5] Mejia is correct that not every special circumstance finding necessarily means the defendant is ineligible for resentencing as a matter of law. In *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011, for example, the court held a felony-murder conviction with a special circumstance finding the murder had been committed during a robbery and the defendant was a major participant who acted with reckless indifference to human life did not indisputably resolve the issue because Supreme Court cases subsequent to the verdict had significantly narrowed the proper scope of a "major participant" finding. But Mejia fails to suggest any way in which the special circumstance finding here, which specifically required a finding of express malice, could possibly be interpreted to permit resentencing under section 1170.95.

accord, *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410.)

### 2. *Mejia's Claim the Superior Court Violated His Constitutional Right to Counsel Lacks Merit*

Even if consistent with the procedure mandated by section 1170.95, Mejia contends the denial of his petition for resentencing without permitting his counsel to adequately prepare and file a response violated his federal constitutional right to counsel. As discussed, however, Mejia's counsel agreed the court could decide the threshold issue of eligibility under the statute without further briefing. Accordingly, any constitutional issue regarding the procedure adopted by the superior court has been forfeited. (See *People v. Farley* (2009) 46 Cal.4th 1053, 1095 [constitutional arguments raised for first time on appeal are forfeited unless they "do not invoke reasons different from those the trial court was asked to apply, but merely assert that the trial court's act or omission, to the extent erroneous *for the reasons actually presented to that court*, 'had the additional legal consequence of violating' the Constitution"]; *People v. Halvorsen* (2007) 42 Cal.4th 379, 414 [same].)

In any event, Mejia's constitutional argument lacks merit. The relief afforded by section 1170.95 is "not subject to Sixth Amendment analysis. Rather, the Legislature's changes constituted an act of lenity that does not implicate defendants' Sixth Amendment rights." (*People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156; accord, *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1114-1115, review granted Nov. 13, 2019, S258175.)[6] Absent adequate factual allegations stating a prima

---

[6] In general, prisoners have no "constitutional right to counsel when mounting collateral attacks upon their convictions."

13

facie case of eligibility for relief, viewed in light of the record before the court, there is no right to counsel in this postjudgment proceeding.  (See *People v. Lewis*, *supra*, 43 Cal.App.5th at p. 1138 [initial eligibility determination under section 1170.95 is analogous to a determination whether to summarily deny a habeas corpus petition to which no constitutional right to counsel attaches]; cf. *McGinnis v. Superior Court* (2017) 7 Cal.App.5th 1240, 1243-1244, fn. 2 ["[a]ny right to habeas corpus counsel, absent an order to show cause, is purely statutory"]; see generally *People v. Shipman* (1965) 62 Cal.2d 226, 232 [in the absence of adequate factual allegations stating a prima facie case for issuance of a writ of error *coram nobis*, counsel need not be appointed either in the trial court or on appeal from a summary denial of relief in that court].)

## DISPOSITION

The order denying Mejia's petition for resentencing is affirmed.


PERLUSS, P. J.

We concur:



SEGAL, J.            FEUER, J.

---

(*Pennsylvania v. Finley* (1987) 481 U.S. 551, 555 [107 S.Ct. 1990, 95 L.Ed.2d 539].)  Under the federal Constitution the right to appointed counsel extends only to trial and the first appeal. When states enact statutes to provide other postconviction relief, they have substantial discretion to develop and implement such programs.  (*Finley*, at pp. 557-559.)