Filed 9/9/22 P. v. Trevino CA5
Opinion following rehearing

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANDREW STEVEN TREVINO,<br><br>    Defendant and Appellant. | F080725<br><br>(Super. Ct. No. MCR052302A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County. Dale J. Blea, Judge.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, Lewis A. Martinez and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE CONCURRING AND DISSENTING OPINION**

**INTRODUCTION**

A jury convicted appellant Andrew Steven Trevino of first degree murder (Pen. Code, § 187, subd. (a);[1] count 1) for the shooting death of Alfonso Alvarado. The jury found true a special-circumstance allegation that this murder was committed while appellant was an active participant in a criminal street gang, and the murder was carried out to further the activities of the gang (§ 190.2, subd. (a)(22)). In count 1, the jury found true a gang enhancement and three firearm enhancements. Finally, the jury convicted appellant of active participation in a criminal street gang (§ 186.22, subd. (a); count 2). In part, appellant received a sentence of life without the possibility of parole.

On July 27, 2022, we filed an unpublished opinion in which we rejected most of appellant's claims on appeal. However, based on Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 699, §§ 1–5) (Assembly Bill 333), which went into effect on January 1, 2022, we concluded that one claim had partial merit. Assembly Bill 333 substantially narrowed the definition of a "criminal street gang" and, based on this retroactive change in law, we vacated the gang conviction in count 2, along with the jury's true finding in count 1 regarding the gang enhancement (§ 186.22, subd. (b)(1)). However, based on *People v. Rojas* (2022) 80 Cal.App.5th 542 (*Rojas*), the majority in our prior opinion concluded it was not appropriate to vacate the jury's true finding regarding the gang-murder special-circumstance allegation (§ 190.2, subd. (a)(22)). We remanded this matter for further proceedings. (*People v. Trevino* (July 27, 2022, F080725).)

On August 2, 2022, appellant filed a petition for rehearing asserting he did not have an opportunity to brief fully whether the jury's true finding regarding the gang-murder special-circumstance allegation (§ 190.2, subd. (a)(22)) had to be reversed in light of Assembly Bill 333. On August 12, 2022, we granted the petition for rehearing and we

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

vacated our prior opinion. We gave the parties an opportunity to file supplemental briefing. Appellant filed a supplemental opening brief, but respondent, which briefed this issue in its answer to the petition for rehearing, did not file anything further.

After reviewing appellant's supplemental arguments, we reach the same disposition as before. We vacate the gang conviction in count 2, along with the jury's true finding in count 1 regarding the gang enhancement (§ 186.22, subd. (b)(1)). Following remand, the People shall have the opportunity to retry these allegations. We vacate appellant's sentence and remand this matter for further proceedings. We otherwise affirm the judgment.

## BACKGROUND

We summarize the material facts that support the convictions and true findings. We provide additional facts later in this opinion when relevant to the issues raised.

An eyewitness, J.S., saw this fatal shooting and he identified appellant in court as the shooter. According to J.S., three suspects had approached Alvarado. The shortest suspect wore a white tank top, and it was this suspect who fired multiple shots. The three suspects ran to a truck and fled.

The prosecution established that appellant had a gang motive to shoot Alvarado. Alvarado hung out with Sureño gang members, and he was, at a minimum, a Sureño gang associate. He had gang-related tattoos.

Appellant was a gang member with Varrio Tiny Winos, a subset of the Norteño gang. Appellant's gang moniker is "Turtle."[2] The jury learned that Norteños and Sureños are deadly rivals. Just before firing, appellant had asked Alvarado if he "banged." When Alvarado denied it, appellant said he was lying and shot him more than once.

---

[2] During closing argument, the defense conceded that appellant is a gang member.

3.

J.S.'s identification of appellant as the shooter was corroborated by two witnesses who testified pursuant to agreements reached with the prosecution. Gabriel Zamora, a former member of appellant's gang, was charged with murder in this case. Zamora confirmed he was one of the three suspects who had approached Alvarado. Zamora told the jury that appellant had worn a white tank top on the day in question, and appellant was the shooter.

Caesar Cruz was in custody for an unrelated robbery with a gang enhancement.[3] He reached a deal with the prosecution to testify against appellant for a potential reduction of his sentence. Cruz knew both appellant and Zamora. Appellant told Cruz about this shooting about two weeks after it had occurred. Appellant said he had shot a "Southsider." Appellant said he was leaning on a fence when he shot using his .22-caliber revolver.

The prosecution established that appellant was the shortest of the three suspects who had approached Alvarado.[4] Appellant possessed a .22-caliber revolver prior to this shooting. Alvarado was killed with bullets which were consistent with .22-caliber. The three suspects had approached a chain-linked fence before Alvarado was shot.

The prosecution's gang expert testified that the Norteño gang benefits if its member shoots and kills a Sureño gang member. The expert opined that an association would exist if such a shooting was done together with other gang members. Based on a hypothetical that matched the facts from this case, the prosecution's gang expert opined that this shooting was done with the specific intent to promote criminal conduct by gang members.

---

[3] At trial, Cruz denied being a gang member. He claimed the gang enhancement occurred because he had been with gang members when his charged crime had occurred.

[4] The three suspects who had approached Alvarado were appellant, Zamora and James McCoy. McCoy was an active Norteño gang member when this shooting occurred.

## DISCUSSION

I.     **The Trial Court Did Not Err Regarding the Admission of Appellant's Statements to Law Enforcement.**

Prior to trial, the defense sought to exclude portions of appellant's statements to law enforcement. According to the defense, the interview improperly continued after appellant had requested counsel.

### A.     *Background.*

Detectives interviewed appellant on February 10, 2015, about six months after Alvarado was killed. Appellant's interview was recorded and the audio was played for the jury.

Towards the beginning of the interview, appellant was administered his *Miranda*[5] rights, which he waived. Appellant concedes in his opening brief that his initial waiver was valid.

Detectives told appellant that they knew he had been at this shooting and they wanted his side of the story. Appellant denied any knowledge of this event. He also denied knowing either McCoy or Zamora despite the detectives showing him pictures of them. Appellant denied ever seeing McCoy's truck after being shown a picture of it. Appellant claimed he had never left his residence on the day in question, and he did not understand why others would say he was involved.

A short time later, appellant said he did not know why these allegations were coming up, and he stated that "if it continues to go further, I'm gonna want a lawyer, you know what I mean." A detective responded, "Yeah, if it continues to go further." Appellant said, "You know what I mean, 'cause—'cause, I really don't [know] what the fuck this is about, you know what I mean." Appellant was again asked if he knew what had happened at this shooting, and appellant denied it. Appellant claimed he had been

---

[5]     *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

mistaken for someone else. He denied being called "Turtle." He continued to deny having any knowledge about this shooting. The interview concluded a short time later.

Prior to trial, the judge ruled that appellant had not made an unequivocal request for the assistance of counsel. The court ruled that the prosecution could play the recording of appellant's interview to the jury.

### B.  Standard of review.

Because appellant's interview was recorded, we independently determine if the trial court erred in not suppressing appellant's statements to law enforcement. (*People v. Duff* (2014) 58 Cal.4th 527, 551.)

### C.  Analysis.

We reject appellant's argument that he unequivocally invoked his right to counsel. The trial court did not err and any presumed error is harmless.

#### 1.  The trial court did not err.

Once a defendant initially waives *Miranda* rights, he or she may change their mind and subsequently invoke the right to counsel during questioning. (*People v. Cunningham* (2015) 61 Cal.4th 609, 645.) Law enforcement must then cease the interrogation unless defense counsel is present or the defendant initiates additional communication. (*Ibid.*) To stop the interview, however, a defendant must unambiguously request counsel. (*Id.* at p. 646.) A defendant " 'must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.' [Citation.]" (*Ibid.*)

We agree with the trial court that appellant did not make an unambiguous request for counsel. To the contrary, appellant's statement was vague regarding whether or not he wanted counsel, when he might want counsel, and under what circumstances. We reject appellant's contention that his request signified that, if the interrogation continued,

he would want a lawyer. To the contrary, a reasonable police officer would not have understood that appellant was unambiguously requesting the presence of counsel at that time. Moreover, the detectives were not required to ask appellant clarifying questions. (See *People v. Tully* (2012) 54 Cal.4th 952, 990.) This record amply demonstrates that the trial court did not err in denying appellant's motion to suppress. In any event, we also conclude that any presumed error was harmless.

### 2. *Any presumed error is harmless.*

Our Supreme Court has held that, if a defendant's confession is erroneously admitted into evidence at trial, a reviewing court may nevertheless find that error harmless from its evaluation of the entire record. (*People v. Cahill* (1993) 5 Cal.4th 478, 510.) The erroneous admission of a defendant's confession may be deemed harmless if the record otherwise overwhelmingly establishes guilt. (See *People v. Jablonski* (2006) 37 Cal.4th 774, 816–817 ["overwhelming evidence" rendered harmless any presumed error in admitting the defendant's statement, which prompted him not to testify at trial]; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 60 [apart from the defendant's statements to law enforcement, evidence of intent to kill was overwhelming].)

The totality of this record amply demonstrates that, even if the trial court erred in permitting admission of appellant's statements, he did not suffer prejudice. Appellant never confessed his involvement to law enforcement regarding this crime. Other evidence, however, overwhelmingly established his guilt.

J.S. identified appellant in court as Alvarado's shooter, and J.S.'s identification was corroborated by Zamora and Cruz. J.S. told the jury that he briefly saw the shooter's face. J.S. explained that the shooter had worn a white tank top, and the shooter was the shortest of the three suspects. The trial evidence established that appellant is clearly shorter than the other two suspects, Zamora and McCoy. Zamora told the jury that appellant was wearing a white tank top when appellant shot Alvarado.

7.

Appellant told Cruz that he had shot a "Southsider" using his .22-caliber revolver while leaning on a fence to shoot. The trial evidence corroborated these details. Alvarado was shot with a .22-caliber gun. The three suspects had approached Alvarado near a fence. The evidence amply supported the prosecution's theory that appellant was the shooter.

During closing argument, the prosecutor focused the jury's attention on J.S.'s eyewitness testimony, and the testimony from Cruz and Zamora. Although the prosecutor mentioned appellant's statements to law enforcement during closing argument, those statements were neither emphasized nor a cornerstone of the prosecution's theory of guilt. Instead, the prosecutor merely noted that appellant had lied to law enforcement about his gang moniker (Turtle) and about knowing the other two suspects, McCoy and Zamora. According to the prosecutor, appellant's lies showed a consciousness of guilt.

Based on this record and the overwhelming evidence establishing appellant's identity as Alvarado's shooter, we can declare harmless beyond any reasonable doubt the admission of appellant's recorded statements to law enforcement. (See *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).) This claim is without merit and reversal is not required.

## II.      Instructional Error did not Occur Regarding the "Certainty" Factor.

Appellant contends that the trial court prejudicially erred and violated his federal due process rights by instructing the jurors with CALCRIM No. 315, which informed the jurors that they could consider a witness's certainty (along with other factors) in evaluating identification testimony. Appellant acknowledges that our Supreme Court has approved the certainty language in a similar instruction.[6] Nevertheless, appellant raises

---

[6]      In *People v. Wright* (1988) 45 Cal.3d 1126, the Supreme Court held "that a proper instruction on eyewitness identification factors should focus the jury's attention on facts relevant to its determination of the existence of reasonable doubt regarding identification,

this claim to preserve it for further review by the California Supreme Court and federal courts.

We determine that appellant has forfeited this claim. In any event, this claim fails on its merits and any presumed error was harmless.

### A. This claim is forfeited.

In *People v. Sánchez* (2016) 63 Cal.4th 411 (*Sánchez*), our Supreme Court addressed this same issue regarding the certainty instruction appearing in CALJIC No. 2.92. Our high court deemed this claim forfeited when the defendant failed to raise this issue in the trial court. It was the defendant's obligation to request modification of the disputed instruction. (*Sánchez, supra*, 63 Cal.4th at pp. 461–462.)

Here, appellant failed to request modification of the certainty factor appearing in CALCRIM No. 315. As such, we agree with respondent that appellant has forfeited this claim. In any event, this claim also fails on its merits.[7]

### B. Appellant's trial was not fundamentally unfair.

In *People v. Lemcke* (2021) 11 Cal.5th 644 (*Lemcke*), the high court recently revisited this issue, and it considered whether the "certainty" instruction violates due process. Based on the context of its trial record as a whole, which included an eyewitness identification expert who testified for the defense, the *Lemcke* court held that due process was not violated. According to *Lemcke*, the certainty factor did not render the defendant's trial fundamentally unfair. (*Id.* at p. 646.) However, the Supreme Court agreed that, despite the absence of a constitutional violation, a "reevaluation of the certainty instruction" was warranted. (*Id.* at p. 647.) *Lemcke* concluded that "near

---

by listing, in a neutral manner, the relevant factors supported by the evidence." (*Id.* at p. 1141.) The high court specifically approved CALJIC No. 2.92, including its certainty factor. (*People v. Wright, supra*, at p. 1144.)

[7] Because the claim also fails on its merits, we need not address appellant's claim of ineffective assistance of counsel.

unanimity in the empirical research" now exists that " 'eyewitness confidence is generally an unreliable indicator of accuracy.' [Citations.]" (*Ibid.*) The high court noted that, based on many studies, "eyewitness confidence is the single most influential factor in juror determinations regarding the accuracy of an identification." (*Ibid.*) In light of these concerns, the Supreme Court referred the matter to the Judicial Council of California and its Advisory Committee on Criminal Jury Instructions to evaluate whether or how this instruction might be modified to avoid juror confusion regarding the correlation between certainty and accuracy. (*Ibid.*) The *Lemcke* court directed trial courts to omit the certainty factor from CALCRIM No. 315 (unless a defendant requests otherwise) until the Judicial Council has completed its evaluation. (*Id.* at pp. 647–648.)

Following *Lemcke*, our high court in *People v. Wright* (2021) 12 Cal.5th 419 (*Wright*) again addressed the concerns associated with a certainty instruction. In *Wright*, no eyewitness identification expert testified for the defense. (*Wright*, *supra*, at p. 453.) However, the defendant's primary trial strategy in *Wright* was to discredit the eyewitnesses who had testified against him, and "to imply that the eyewitnesses were testifying falsely. At no point did defendant argue that the witnesses mistook his identity. This was in contrast to *Lemcke*, where the defense strategy focused on questioning the victim's identification of the defendant." (*Wright*, *supra*, at p. 453, citing *Lemcke*, *supra*, 11 Cal.5th at pp. 652–653.) The *Wright* court held that *Lemcke* was distinguishable because multiple witnesses had identified the defendant in *Wright* and at least two of the witnesses had known the defendant in some capacity prior to the attack. (*Wright*, *supra*, at p. 453.)

Here, appellant did not call an expert witness to testify about the inherent problems associated with eyewitness identifications. Nevertheless, defense counsel cross-examined J.S. regarding his need to wear glasses and his distance to the shooting when he witnessed this fatal event. During closing argument, defense counsel noted that J.S. had been about 400 feet from the suspects when he witnessed this shooting, and

10.

defense counsel questioned whether J.S. could have really seen much detail, such as facial features, from that far away. Defense counsel argued to the jurors that J.S. could not have identified anyone based on facial characteristics. It was the defense's position that J.S. actually saw Zamora firing the gun. Zamora had no tattoos visible on his arms, while appellant had tattoos on his arms, which J.S. should have seen. Defense counsel noted that J.S. had testified that the shooter got on the driver's side of the truck when fleeing, but Zamora had claimed that appellant had entered the passenger side of the truck. Defense counsel told the jurors that J.S. was not a reliable witness and he had identified appellant in court only because J.S. trusted the government.

Although the defense did not call an expert witness to testify regarding witness certainty, appellant had a full and fair opportunity to challenge the eyewitness identification testimony that was introduced against him. In any event, we note that J.S. was never asked at trial whether he was certain or not regarding his identification of appellant as the shooter.

The jury received other instructions that eliminate any reasonable concerns that the prosecution's burden of proof was lowered or that appellant's due process rights were violated. (See *Lemcke*, *supra*, 11 Cal.5th at pp. 658, 660.) With CALCRIM No. 220, the jurors were informed that appellant was presumed to be innocent and this presumption required the prosecution to prove him guilty beyond a reasonable doubt.

With CALCRIM No. 226, the jurors were told to use their "common sense and experience" when judging a witness's credibility. The jurors were given a list of factors to consider, including how well the witness could perceive the event, the witness's behavior while testifying, and whether the witness made prior inconsistent statements. The jurors were instructed that people sometimes "honestly forget things, or make mistakes about what they remember." The jurors were informed they could accept part of a witness's testimony and reject other parts.

11.

Finally, with CALCRIM No. 315, the jurors were given 15 factors to consider when deciding whether J.S. gave truthful and accurate identification testimony. These factors included the disputed "certainty" question. After listing the factors to consider, this instruction again reiterated that the prosecution bore the burden to prove beyond a reasonable doubt that it was appellant who committed the crime. The jurors were instructed to find appellant not guilty if the People did not meet this burden.

The instructions taken as a whole do not support a conclusion that the jury was encouraged to give undue weight to the disputed certainty factor. To the contrary, the entirety of this trial record demonstrates that the inclusion of the certainty factor did not render appellant's trial fundamentally unfair. This instruction did not lower the prosecution's burden of proof. (See *Lemcke*, *supra*, 11 Cal.5th at p. 657.) Based on *Lemcke* and *Wright*, we reject appellant's claim. He did not suffer any constitutional violations.

### C.    *Any presumed error was harmless.*

We can declare under any standard of review that any presumed error was harmless. J.S. was not asked at trial whether he was certain of his identification of appellant as the shooter. Moreover, the prosecutor never mentioned the certainty instruction during closing argument. Instead, the prosecutor emphasized the totality of the evidence.

CALCRIM No. 315 mentioned the certainty factor in a neutral manner. It merely told the jurors that they should consider it and it did not suggest that certainty equals accuracy. During closing argument, the defense emphasized various concerns surrounding J.S.'s eyewitness testimony. The defense argued that Zamora must have been the real shooter. The defense asked the jury to acquit appellant of all charges.

Based on the verdicts rendered, it is apparent that the jury rejected the defense's position that it was Zamora who had shot Alvarado. It is not reasonably probable

12.

appellant would have obtained a more favorable result had the trial court deleted the certainty factor. (See *Sánchez, supra*, 63 Cal.4th at p. 463.) Likewise, we can declare beyond any reasonable doubt that the alleged instructional error did not contribute to the verdicts. (See *People v. Aranda* (2012) 55 Cal.4th 342, 367.) In other words, the guilty verdicts actually rendered in this trial were surely unattributable to any presumed error. (See *Sullivan v. Louisiana* (1993) 508 U.S. 275, 279.) Accordingly, prejudice is not present even under the more stringent *Chapman* standard. As a result, reversal of appellant's judgment is not warranted and this claim fails.

## III. Instructional Error Did Not Occur Regarding Cruz's Status as an Accomplice.

The trial court instructed the jurors with CALCRIM No. 335 regarding how to consider Zamora's testimony as an accomplice. Appellant maintains that the trial court erred when it failed to instruct the jury with CALCRIM No. 334[8] to consider whether Cruz was also an accomplice. Appellant contends that an inference may be drawn from the trial evidence that Cruz was an active gang participant. Based on that inference, appellant argues that the jury should have been instructed to consider whether Cruz was an accomplice in counts 1 and 2. We disagree.

When sufficient evidence exists that a witness is an accomplice, a trial court must instruct the jury on the principles governing the law of accomplices, including the need for corroboration. (*People v. Tobias* (2001) 25 Cal.4th 327, 331.) "Whether a person is

---

**8**  CALCRIM No. 334 instructs a jury to consider whether someone was an accomplice in the charged crimes. This instruction states that an accomplice is someone who is subject to prosecution for the identical crime charged against the defendant. Someone is an accomplice if (1) he or she personally committed the crime; or (2) he or she knew of the criminal purpose of the person who committed the crime; and (3) he or she intended to, and did in fact, aid, facilitate, promote, encourage, or instigate the commission of the crime, or participated in a criminal conspiracy to commit the crime. A defendant bears the burden to prove it is more likely than not the witness was an accomplice.

13.

an accomplice is a question of fact for the jury unless the facts and the inferences to be drawn therefrom are undisputed." (*People v. Coffman and Marlow*, *supra*, 34 Cal.4th at p. 103.)

In this matter, no evidence was introduced that demonstrated or even reasonably suggested that Cruz was involved in Alvarado's shooting. As such, it was not appropriate for the trial court to have instructed the jury to consider whether Cruz was an accomplice in count 1.

In count 2, the prosecution charged appellant with active participation in a criminal street gang in violation of section 186.22, subdivision (a). It was alleged that appellant had committed this crime with Zamora and McCoy on or about the day Alvarado was shot (August 19, 2014).

It is undisputed that Cruz knew appellant, Zamora and McCoy. Likewise, it is undisputed that Cruz had been charged in an unrelated robbery that had a gang enhancement. However, nothing showed that Cruz had acted with appellant in actively participating in a criminal street gang. (See § 186.22, subd. (a).) Nothing established or reasonably suggested that Cruz had personally committed the crimes charged in this matter, or that Cruz had aided or encouraged appellant to commit these crimes.

A review of this record shows that the trial court had no duty to instruct the jury with CALCRIM No. 334. Substantial evidence does not exist which demonstrates that Cruz was an accomplice with appellant in counts 1 or 2. Thus, instructional error did not occur and this claim is without merit.

## IV. Appellant's Claim of Cumulative Error is Without Merit.

Appellant raises a claim of cumulative error. "Under the 'cumulative error' doctrine, errors that are individually harmless may nevertheless have a cumulative effect that is prejudicial." (*In re Avena* (1996) 12 Cal.4th 694, 772, fn. 32.) A claim of

14.

cumulative error is essentially a due process claim. (*People v. Rivas* (2013) 214 Cal.App.4th 1410, 1436.) The test is whether the defendant received a fair trial. (*Ibid.*)

We reject appellant's claim of cumulative error because we have denied all of his individual claims. (*People v. Bradford* (1997) 14 Cal.4th 1005, 1057 [cumulative prejudice argument rejected because each individual contention lacked merit or did not result in prejudice].) Taking all of appellant's claims into account, we are satisfied that he received a fair adjudication regarding his guilt for Alvarado's murder.

## V. The Trial Court Properly Denied Appellant's *Marsden* Motion.

After appellant was convicted, he sought to replace his appointed attorney before the sentencing hearing. The trial court conducted a *Marsden* hearing.[9]

### A. *Appellant's list of grievances.*

The court held a closed hearing for appellant to state his grievances with his counsel. In summary, appellant alleged the following:

1. Counsel failed to subpoena witnesses;

2. Counsel failed to investigate the case;

3. Counsel changed the trial strategy so appellant should not have admitted his prior offenses;

4. Counsel failed to properly impeach witnesses;

5. Counsel had a conflict of interest with the prosecutor and her spouse;

6. Counsel failed to request exculpatory evidence from the prosecution;

7. Counsel failed to bring to the court's attention an issue relating to jail staff seizing privileged paperwork from appellant's cell and purportedly forwarding appellant's documents to the prosecution;

8. Counsel failed to pursue information relating to illegally seized evidence and "tainted/coached" witnesses;

---

[9] *People v. Marsden* (1970) 2 Cal.3d 118.

9. Counsel failed to object to inaccurate translation from a Spanish interpreter;[10]

10. Counsel was generally unqualified to handle the case;

11. Counsel failed to investigate a concern that one of the law enforcement witnesses had possibly shared information about this trial with another law enforcement officer; and

12. Counsel was unfit mentally to represent appellant due to personal factors.

After appellant finished listing his numerous grievances, his appointed counsel responded. Defense counsel explained that he had experienced decades of "complex" trial work, including dozens of felony cases. Counsel stated that he had investigated everything in this case. He ultimately decided on a specific trial strategy in which they would not dispute that appellant was a gang member in order to have jury credibility. Counsel said he had remained in contact with appellant and followed up on appellant's concerns. Finally, counsel denied any nonprofessional relationship with the prosecutor's husband,[11] and explained the events in his personal life had not impacted this case.

The court believed that defense counsel had adequately addressed the conflict of interest and personal concerns. The court found that the remaining issues fell under defense counsel's trial strategy. Defense counsel confirmed that he could continue representing appellant in this matter. The court concluded that a showing had not been made that counsel had failed to represent appellant appropriately. The court denied appellant's *Marsden* motion.

---

**10** J.S. testified through use of a certified Spanish language interpreter.

**11** The prosecutor's husband was apparently a prosecutor in another county in which counsel also practiced. On one occasion, counsel coordinated discovery in *this* case through the prosecutor's husband in the other county.

### B. Analysis.

" 'A defendant is entitled to have appointed counsel discharged upon a showing that counsel is not providing adequate representation or that counsel and defendant have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' [Citation.] When the defendant seeks to remove appointed counsel 'the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of counsel's inadequacy.' [Citation.] The trial court's ruling is reviewed for abuse of discretion." (*People v. Panah* (2005) 35 Cal.4th 395, 431.) An abuse of discretion exists if the ruling was arbitrary, capricious or patently absurd that resulted in a manifest miscarriage of justice. (*People v. Johnson* (2022) 12 Cal.5th 544, 605–606.)

Appellant contends that his defense counsel failed to "fully address" all of his complaints during the hearing. According to appellant, his counsel did not explain why he did not call each of the potential character or alibi witnesses. In addition, his counsel did not explain why he did not present certain evidence, such as the gang's hierarchy that appellant wanted introduced. Counsel also did not explain what evidence appellant had believed was illegally obtained, and why he did not seek to have such evidence excluded. According to appellant, the court was required to probe into each of appellant's concerns to determine whether or not counsel was constitutionally ineffective. We disagree.

Although a trial court must give a defendant an opportunity to express specific reasons why he believes he is not being adequately represented, a court is not required to accept the defendant's assertions of inadequate representation. (*People v. Orey* (2021) 63 Cal.App.5th 529, 568.) Tactical disagreements between appellant and his counsel are insufficient to demonstrate an irreconcilable conflict. (*People v. Rodriguez* (2014) 58 Cal.4th 587, 624.)

As the trial court noted, a number of appellant's concerns amounted to trial strategy, which is insufficient to grant a *Marsden* motion. Moreover, counsel explained

17.

to the court that he had discussed all of the witnesses and evidence with appellant, and there were no additional witnesses that the defense could call. Defense counsel also stated that he did not believe any new evidence existed to investigate, and nothing had been discovered posttrial that would rise to a potential *Brady* violation.[12]

Although defense counsel may not have responded to every one of appellant's numerous complaints, counsel provided a detailed explanation regarding how he had approached this trial. The court carefully examined the entire circumstances. Based on counsel's responses, it is apparent that counsel was reasonably prepared for trial. This record does not demonstrate that a failure to replace appellant's counsel would have substantially impaired or denied appellant the right to effective assistance of counsel. (See *Marsden*, *supra*, 2 Cal.3d at p. 123.) This record also does not "clearly" show that defense counsel's representation was inadequate. (*People v. Streeter* (2012) 54 Cal.4th 205, 230.) It cannot be stated that the court's ruling was arbitrary, capricious or patently absurd. Thus, an abuse of discretion is not present. Therefore, reversal of appellant's judgment is not appropriate and this claim is without merit.

## VI. Following Assembly Bill 333, We Vacate the True Finding Regarding the Gang Enhancement in Count 1 and the Conviction in Count 2.

While this appeal was pending, the Legislature enacted Assembly Bill 333, which amended, in part, the elements necessary to sustain a gang enhancement. (*People v. Ramos* (2022) 77 Cal.App.5th 1116, 1119.) Assembly Bill 333 also added section 1109, which permits a defendant to request bifurcation of alleged gang enhancements, and it requires bifurcation of any charge that a defendant is actively participating in a criminal street gang. (§ 1109, subds. (a) & (b), added by Stats. 2021, ch. 699, § 5.)

Section 186.22, subdivision (f), defines a " 'criminal street gang' " in California. A former version of this statute was used to convict appellant in count 2 as an active gang

---

[12]     *Brady v. Maryland* (1963) 373 U.S. 83.

18.

participant (§ 186.22, subd. (a)). The former version was also used for the jury's true findings in count 1 regarding the gang-murder special-circumstance allegation (§ 190.2, subd. (a)(22)) and the gang enhancement (§ 186.22, subd. (b)(1)). However, Assembly Bill 333 substantially narrowed the definition of a "criminal street gang" in several important ways. (*Rojas*, *supra*, 80 Cal.App.5th at p. 552.) Subdivision (f) of section 186.22 now excludes from the definition of a criminal street gang those associations or groups whose members have individually—but not collectively—engaged in a pattern of criminal gang activity. (*Rojas*, *supra*, at p. 552.) "Assembly Bill 333 also narrowed subdivision (f)'s definition of a criminal street gang by substantially restricting the definition of a 'pattern of criminal gang activity.' Assembly Bill 333 imposed a new requirement that, to establish a pattern of criminal gang activity, the prior offenses must have commonly benefitted a gang, and the benefit must have been more than reputational. Additionally, the last of the offenses used to establish a pattern of criminal gang activity now must have occurred within three years prior to the commission of the current offense." (*Rojas*, *supra*, at pp. 552–553.)

### A. Appellant's gang conviction in count 2 and the true finding regarding the gang enhancement in count 1 must be vacated.

The parties agree that, in light of Assembly Bill 333, we must vacate both appellant's conviction in count 2 for active participation in a criminal street gang (§ 186.22, subd. (a)) and the jury's true finding in count 1 regarding appellant's gang enhancement (§ 186.22, subd. (b)(1)). We agree.

Our court has already concluded that Assembly Bill 333 is retroactive in all cases not yet final on appeal. (*People v. Montano* (2022) 80 Cal.App.5th 82, 89; *People v. Ramos*, *supra*, 77 Cal.App.5th at p. 1126.) Thus, appellant is entitled to its ameliorative benefits. Neither party argues, nor can we conclude, that the evidence presented at trial was sufficient to sustain either the conviction in count 2 or the gang enhancement in count 1 under the revised requirements of section 186.22. As such, that conviction and

true finding must be vacated.[13] (*Rojas*, *supra*, 80 Cal.App.5th at p. 546.) Following remand, however, the prosecution has the right to retry appellant regarding the gang charge alleged in count 2 and the gang enhancement alleged in count 1. (See *People v. Ramos*, *supra*, 77 Cal.App.5th at p. 1128.)

**B.**    ***It is not appropriate to vacate the jury's true finding regarding the gang-murder special circumstance.***

We turn to the jury's true finding regarding the gang-murder special-circumstance allegation (§ 190.2, subd. (a)(22)). Appellant contends that this true finding must also be vacated.[14] In our prior opinion, the majority rejected that argument, relying on *Rojas*, *supra*, 80 Cal.App.5th 542. (*People v. Trevino*, *supra*, F080725.) The majority again reaches the same conclusion.

The gang-murder special-circumstance allegation was enacted in 2000 as part of Proposition 21. (*Rojas*, *supra*, 80 Cal.App.5th at p. 550.) This special circumstance applies when a "defendant intentionally killed the victim while the defendant was an active participant in a criminal street gang, as defined in subdivision (f) of Section 186.22, and the murder was carried out to further the activities of the criminal street gang." (Prop. 21, § 11; see § 190.2, subd. (a)(22).)

A divided panel from this court has already analyzed the impact of Assembly Bill 333 on a gang-murder special-circumstance allegation under section 190.2, subdivision (a)(22). The majority in *Rojas* held that Assembly Bill 333 constituted an impermissible

---

**13**    Because we must vacate the conviction in count 2 and the jury's true finding regarding the gang enhancement in count 1, we do not address appellant's claims that certain sentencing errors occurred. Instead, this matter will be remanded for further proceedings, including resentencing.

**14**    Respondent had initially agreed that the jury's true finding regarding the gang-murder special circumstance must be vacated. However, in a subsequent supplemental brief filed before the petition for rehearing, respondent stated in a footnote that its position had changed and it appeared improper to apply the amendments rendered by Assembly Bill 333 to the gang-murder special-circumstance allegation.

amendment of Proposition 21. (*Rojas*, *supra*, 80 Cal.App.5th at p. 547.) Proposition 21 required any legislative amendment to have two-thirds passage of each house (or voter approval), and Assembly Bill 333 did not satisfy those requirements. (*Rojas*, *supra*, at p. 553.) The *Rojas* majority concluded that Assembly Bill 333 represented an amendment of Proposition 21 because it would reduce the scope of murder punishable under section 190.2, subdivision (a)(22). (*Rojas*, *supra*, at p. 554.) "Because Assembly Bill 333 'takes away' from the scope of conduct that Proposition 21 made punishable under section 190.2, it is an amendment. While the Legislature was free to amend Proposition 21 in this fashion, it could only do so with a two-thirds vote in each house." (*Rojas*, *supra*, at p. 555, citing Voter Information Guide, Primary Elec. (March 7, 2000) text of Prop 21, § 39, p. 131].) Assembly Bill 333 cannot amend Proposition 21 because it did not comply with its requirements. (*Rojas*, *supra*, at p. 555.)

The majority in *Rojas* determined that, because Assembly Bill 333 takes away from Proposition 21, it is unconstitutional to the extent it would amend that initiative. (*Rojas*, *supra*, 80 Cal.App.5th at p. 557, citing Cal. Const., art. II, § 10(c).) "The appropriate remedy is not to void Assembly Bill 333 in its entirety, but rather to disallow this unconstitutional application of Assembly Bill 333." (*Rojas*, *supra*, at p. 557.) Consequently, *Rojas* held that "Assembly Bill 333 does not alter the scope or effect of section 190.2, subdivision (a)(22)." (*Rojas*, *supra*, at p. 558.)

In his supplemental brief following the petition for rehearing, appellant contends that Assembly Bill 333 did not amend Proposition 21. Appellant cites *People v. Lee* (2022) 81 Cal.App.5th 232 (*Lee*), which reached the opposite conclusion from *Rojas*. In *Lee*, Division Four of the Second District concluded that Assembly Bill 333 does not unconstitutionally amend section 190.2, subdivision (a)(22). Focusing on the question of voter intent, the *Lee* court opined there is "nothing to suggest that the electorate intended to impose a time-specific incorporation of the term 'criminal street gang' in the gang-murder special-circumstance statute." (*Lee*, *supra*, at p. 245.) Accordingly, *Lee* holds

21.

"that the term 'criminal street gang' as incorporated in the gang-murder special-circumstance statute was 'intended to conform at all times' and 'remain permanently parallel' to section 186.22." (*Ibid.*, quoting *In re Jovan B.* (1993) 6 Cal.4th 801, 816–817 & fn. 10.)

In the present opinion, the majority agrees with the analysis in *Rojas* regarding its conclusion that "allowing Assembly Bill 333's changes to section 186.22 to affect section 190.2, subdivision (a)(22) would constitute an impermissible amendment of Proposition 21." (*Rojas*, *supra*, 80 Cal.App.5th at p. 547.) *Rojas* thoroughly and convincingly explained its reasoning, and we continue to adopt its holding here. Consequently, we reject *Lee*'s contrary holding and we find unpersuasive appellant's position that the jury's true finding regarding the gang-murder special-circumstance allegation must also be vacated.[15] We affirm the jury's finding in this regard.

### C.     *It is not appropriate to reverse the murder conviction in count 1.*

Appellant contends that his murder conviction in count 1 must be reversed because of Assembly Bill 333 and section 1109. He argues he was entitled to a trial in which all of the gang allegations were bifurcated. We disagree. Gang evidence was properly introduced at trial. In any event, we also conclude that any presumed error was harmless. We first address forfeiture.

---

[15]     In his supplemental brief, appellant also cites *People v. Lopez* (2022) 82 Cal.App.5th 1 (*Lopez*), an opinion from this court in which another panel analyzed the impact of Assembly Bill 333 on the gang conspiracy statute (§ 182.5). The *Lopez* court rejected the People's argument that Assembly Bill 333 impermissibly amended Proposition 21, and it held that Assembly Bill 333's amendments lawfully applied to the gang conspiracy statute. (*Lopez*, *supra*, 82 Cal.App.5th at p. 7.) We express no opinion on the holding reached in *Lopez*, but note it did not directly analyze the impact of Assembly Bill 333 on the gang-murder special-circumstance allegation (§ 190.2, subd. (a)(22)).

### 1. *We decline to find forfeiture.*

It is undisputed that appellant did not request bifurcation of the gang allegations when this matter proceeded to trial. The parties dispute whether or not appellant has forfeited this issue in previously failing to seek bifurcation. We disagree with respondent that we should apply the forfeiture doctrine here.

The allegations against appellant included the gang-murder special circumstance (§ 190.2, subd. (a)(22)). This allegation was required to be tried "at the same time" as the murder charge. (§ 190.1, subd. (a).) Accordingly, a motion to sever or bifurcate the gang allegations in this case would very likely have been frivolous. Thus, we decline to find forfeiture in this situation. In any event, it is appropriate to review this claim to forestall a claim of ineffective assistance of counsel. (See *People v. Lua* (2017) 10 Cal.App.5th 1004, 1014.)

### 2. *Gang evidence was properly introduced at trial.*

Section 1109 is silent regarding whether bifurcation is required of a gang-murder special-circumstance allegation (§ 1109, subds. (a) & (b)). Appellant acknowledges that section 1109 only discusses bifurcation regarding gang enhancements and active participation charges under section 186.22, subdivisions (a), (b) and (d). According to appellant, however, we should interpret section 1109 to also require bifurcation of gang-murder special-circumstance allegations under section 190.2, subdivision (a)(22). We disagree.

Another panel from this court has already held that section 1109 does not apply to gang-murder special-circumstance allegations under section 190.2, subdivision (a)(22). (*People v. Montano*, *supra*, 80 Cal.App.5th at p. 114.) We see no reason to disturb that holding. The express terms of section 1109 do not state that bifurcation is required for an allegation under section 190.2. (See § 1109, subds. (a) & (b).) It is for the Legislature, and not an appellate court, to rewrite section 1109. (*People v. Montano*, *supra*, 80

23.

Cal.App.5th at p. 114.) Consequently we reject appellant's arguments that bifurcation was required.

### 3.    *Any presumed error was harmless.*

Appellant argues that his trial was rendered fundamentally unfair because substantial gang evidence was introduced against him. He contends he suffered violations of both his substantive and procedural due process rights. He asserts structural error occurred, requiring automatic reversal without the need to analyze prejudice. In the alternative, appellant maintains that reversal of his murder conviction is required either under the federal standard of *Chapman* or the state standard of *People v. Watson* (1956) 46 Cal.2d 818. Given the credibility concerns that surrounded the witnesses against him, appellant claims that evidence of his identity as the shooter was "far from compelling."

We reject appellant's arguments and conclude that any presumed error was overwhelmingly harmless. Even if bifurcation should have occurred, gang evidence would have been admissible as part of the murder prosecution because the People had the right to establish appellant's gang motive to shoot Alvarado as a rival gang member. As respondent correctly notes, section 1109 does not preclude gang evidence from being introduced at trial if it is offered for identity, motive, or intent (among others) under Evidence Code section 1101, subdivision (b). Appellant's gang membership was highly relevant to the prosecution's theory regarding how and why appellant shot Alvarado.

The evidence conclusively established appellant's identity as the shooter. J.S. identified appellant in court as the shooter. J.S. stated that he briefly saw the shooter's face. J.S. explained that the shooter had worn a white tank top, and he was the shortest of the three suspects. The trial evidence established that appellant is clearly shorter than the other two suspects, Zamora and McCoy. Further, J.S.'s eyewitness identification was corroborated by Zamora, who told the jury that appellant was wearing a white tank top when he shot Alvarado.

24.

Based on the totality of the evidence, the prosecution overwhelmingly established appellant's identity as Alvarado's shooter.  This record does not demonstrate that appellant's trial was rendered fundamentally unfair, and we reject appellant's due process arguments.  We likewise conclude that structural error did not occur.  (See *People v. Sivongxxay* (2017) 3 Cal.5th 151, 178 [describing requirements for structural error].)  Under any standard of review, it is clear that appellant did not suffer prejudice.  Accordingly, reversal of the murder conviction is not warranted, and this claim fails.

## DISPOSITION

Appellant's sentence is vacated and this matter is remanded for further proceedings.  The conviction in count 2 is vacated. The jury's true finding in count 1 regarding the gang enhancement is vacated. The People shall have the right to retry appellant on that charge and enhancement allegation.  If the People do not bring appellant to retrial within the time limits of section 1382, subdivision (a)(2), the trial court shall proceed to resentence appellant accordingly.  In all other respects, appellant's judgment is affirmed.

LEVY, Acting P. J.

I CONCUR:


DETJEN, J.

25.

SNAUFFER, J., Concurring and Dissenting.

I concur with the majority on all points except its conclusion Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 699, §§ 1-5) (AB 333), is unconstitutional as applied to the gang-murder special circumstance (Pen. Code,[1] § 190.2, subd. (a)(22)). As explained below, I disagree and would also vacate the special circumstance finding as a consequence of AB 333.

Proposition 21, a voter initiative, added the gang-murder special circumstance to the Penal Code. This special circumstance sets the penalty for first degree murder at "death or imprisonment in the state prison for life without the possibility of parole" if "[t]he defendant intentionally killed the victim while the defendant was an active participant in a criminal street gang, as defined in subdivision (f) of Section 186.22, and the murder was carried out to further the activities of the criminal street gang." (§ 190.2, subdivision (a)(22).)

AB 333, as relevant, amends the section 186.22, subdivision (f) "criminal street gang" definition. The majority concludes this amendment is unconstitutional as applied to the gang-related murder special circumstance because it impermissibly amends a voter initiative. (Maj. opn. *ante*, at p. 22; see *People v. Cooper* (2002) 27 Cal.4th 38, 44 (*Cooper*) [limits on amending initiative enactments].) I believe the majority is mistaken.

Our Supreme Court has "described an amendment as 'a legislative act designed to change an existing initiative statute by adding or taking from it some particular provision.' [Citation.] But this does not mean that any legislation that concerns the same subject matter as an initiative, or even augments an initiative's provisions, is necessarily an amendment for these purposes. 'The Legislature remains free to address a " 'related but distinct area' " [citations] or a matter that an initiative measure "does not specifically

---

[1] All statutory references are to the Penal Code unless otherwise noted.

authorize *or* prohibit." ' [Citations.] In deciding whether" AB 333 amends Proposition [21] "we simply need to ask whether it prohibits what the initiative authorizes, or authorizes what the initiative prohibits." (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571 (*Pearson*).)

"In resolving the question, we must decide what the voters contemplated. '[T]he voters should get what they enacted, not more and not less.' [Citation.] [¶] This is a question of statutory interpretation. When we interpret an initiative, we apply the same principles governing statutory construction. We first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole. If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language. If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure. " (*Pearson, supra,* 48 Cal.4th at p. 571.)

"Section 190.2[, subd.] (a)(22) was enacted as part of Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998, an initiative measure adopted by the electorate at the March 2000 primary election." (*People v. Shabazz* (2006) 38 Cal.4th 55, 65 (*Shabazz*).) Because this section itself remains intact, it sheds no light on the issue[2] and we must look beyond it to divine voter intent.

As pertinent, Proposition 21's "findings and declarations … announced: 'Gang-related crimes pose a unique threat to the public because of gang members' organization and solidarity. Gang-related felonies should result in severe penalties. *Life without the*

_____

[2] Section 190.2, subdivision (a)(22), states in full: "The defendant intentionally killed the victim while the defendant was an active participant in a criminal street gang, as defined in subdivision (f) of Section 186.22, and the murder was carried out to further the activities of the criminal street gang."

2.

*possibility of parole or death should be available to murderers who kill as part of any gang-related activity.' "* (*Shabazz, supra,* 38 Cal.4th at p. 65.) "The legislative analysis of Proposition 21 contained a summary chart of the gang provisions, and stated that [it] '[i]ncreases penalties for gang-related crimes ….' " (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 906.)

In my view, "the voters who approved Proposition [21] … got, and still have, precisely what they enacted—stronger sentences for persons convicted of [gang-related special circumstance] murder …. By enacting [AB 333], the Legislature has neither undermined [this] initiative[] nor impinged upon the will of the voters who passed" it. (*People v. Superior Court (Gooden)* 42 Cal.App.5th 270, 289 (*Gooden*); accord *People v. Nash* (2020) 52 Cal.App.5th 1041, 1058-1061 (*Nash*).)

The majority view, citing *People v. Rojas* (June 29, 2022, F080361) __ Cal.App.5th __ [2022 WL 2338929], "relies on a general principle of statutory construction: ' "where a statute adopts by specific reference the provisions of another statute … such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified." ' " (*People v. Lee* (June 24, 2022, B300756) __ Cal.App.5th __, __ [2022 WL 2763576, at *31] (*Lee*).) Here, of course, Proposition 21 enacted section 190.2, subdivision (a)(22) which in turns references section 186.22, subdivision (f). The People contend this "reference to section 186.22, subdivision (f) reflects an intent to incorporate that provision in the form in which it existed at the time Proposition 21 was adopted, and not as the provision might subsequently be modified." (*Lee, supra,* __ Cal.App.5th at p. __ [2022 WL 2763576, at *31].)

But Proposition 21 expressed no such intent. Indeed, "where the words of an incorporating statute do not make clear whether it contemplates only a time-specific incorporation, 'the determining factor will be … legislative intent ….' " (*In re Jovan B.* (1993) 6 Cal.4th 801, 816.) Although this quote strictly speaks to legislative

3.

intent, there is no reason it does not apply to statutes enacted by the ballot initiative process.  (*Lee, supra,* __ Cal.App.5th at p. __ [2022 WL 2763576, at *31].)  "[W]e presume that the 'adopting body' is aware of existing laws when enacting a ballot initiative."  (*People v. Gonzales* (2018) 6 Cal.5th 44, 50.)  Proposition 21 itself exemplifies these maxims.

In section 14, Proposition 21 states, in part, "*all references to existing statutes in subdivisions (c) to (g), inclusive, of Section 667, are to those statutes as they existed on the effective date of this act, including amendments made to those statutes by this act.*" (Ballot Pamp., Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 14, p. 123.)  Section 16 of Proposition 21 similarly states, in part, "*all references to existing statutes in Section 1170.12 are to those statutes as they existed on the effective date of this act, including amendments made to those statutes by this act.*"  (Ballot Pamp., Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 16, p. 124.)

Clearly, the electorate knew how to express its intent to freeze laws in time. Instead, they chose not to when enacting the gang-murder special circumstance.  (See Ballot Pamp., Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 11, pp. 121-122.)

The Proposition 21 electorate was undoubtedly concerned with increasing the punishment for certain gang-related murders.[3]  That increased punishment—life without parole or death—survives AB 333.  Accordingly, I respectfully dissent from the majority's conclusion AB 333 does not apply to section 190.2, subdivision (a)(22).  I would instead vacate the jury's special circumstance finding based on reasons identical to

---

[3] By certain I mean only those gang-related murders in which the defendant killed *while* actively participating in a criminal street gang *and* were "carried out to further the activities of the criminal street gang."  (§ 190.2, subd. (a)(22).)  Such murders are a subset of all gang-related murders.

the People's concession to reverse all other gang-related findings.[4] (Maj. opn., *ante* at pp. 19-20.)

SNAUFFER, J.

---

[4] It is worth noting the constitutional argument the majority relies upon is neither briefed nor raised by the parties. At best, the People state without explanation, in a footnote, AB 333 does not apply to the "gang murder special circumstance created by Proposition 21." (See Gov. Code, § 68081.)