Filed 11/13/23

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDREW CHRISTIAN RHODIUS,<br><br>    Defendant and Appellant. | E080064<br><br>(Super.Ct.No. RIF1502535)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed.

Matthew Aaron Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, and Robin Urbanski, Paige Hazard, and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

1

## INTRODUCTION

Defendant, Andrew Christian Rhodius, appeals the trial court's denial of a full resentencing hearing under Penal Code section 1172.75[1]. Defendant contends the trial court erred in denying defendant a full resentencing hearing on the basis that defendant's prison priors were imposed and stayed, not imposed and executed. We affirm.

## PROCEDURAL BACKGROUND[2]

An information was filed on July 28, 2016, charging defendant with three felony counts (Pen. Code, § 29800, subd. (a); Health & Saf. Code, §§ 11378 & 11370.1), one misdemeanor count (Pen. Code, § 148, subd. (a)(1)), two prison priors (Pen. Code, § 667.5, subd. (b) (section 667.5(b)), one serious felony prior (Pen. Code, § 667, subd. (a)), and one strike prior (Pen. Code, §§ 667, subd. (c), (e)(1), & 1170.12, subd. (c)(1).) On December 23, 2016, a jury found defendant guilty on all charges except for count 2 (Health & Saf. Code, § 11378.) On February 15, 2017, in exchange for a stipulated sentence of 11 years, defendant pled guilty to count 2 and admitted both prison priors, his serious felony prior, and his strike prior. Defendant was then sentenced on all counts and allegations.[3] Of relevance, for each prison prior (section 667.5(b)), the trial court imposed one year and then stayed the punishment.

---

[1] All further unlabeled statutory references are to the Penal Code.

[2] This court omits a recitation of the facts underlying the convictions because it is not relevant to the issue on appeal.

[3] This court omits a detailed recitation of the trial court's sentence as it is irrelevant to the issue on appeal.

On June 16, 2022, the California Department of Corrections and Rehabilitation (CDCR) identified defendant as an inmate who was serving a sentence containing a section 667.5(b) prior. The CDCR notified the trial court, and a hearing to recall and resentence defendant pursuant to section 1172.75, subdivision (a), occurred on August 22, 2022. At the resentencing, the trial court vacated the sentence for defendant's two section 667.5(b) priors and ordered them stricken. Defendant argued for a full resentencing hearing going beyond striking his two priors. Defendant provided documentation detailing positive changes he had made in the time since his conviction. The trial court reserved ruling allowing the parties to provide further briefing on the issue of resentencing.

Defendant filed a brief arguing he is entitled to a full resentencing hearing. Defendant reasoned that to deny a full resentencing hearing because his section 667.5(b) priors were stayed is contrary to the plain language of the statute and the legislative intent. Defendant also cited specifically how his sentence could and should be modified. The People filed an opposition arguing defendant is not entitled to a full resentencing hearing because the plain language of the statute demonstrates relief under section 1172.75 is reserved for persons whose sentence was increased by the imposition of section 667.5(b) priors. The People also argued that even if the language of the statute is ambiguous, the legislative history shows that the intended benefit was only for those defendants whose sentence was increased by the enhancements. Defendant filed a reply to the People's opposition brief, arguing that a stayed prison prior is still an imposed

prison prior for the purposes of section 1172.75. Defendant also argued in his reply that the absence of express language in the statute distinguishing stayed priors from executed priors demonstrates the Legislature's intent to treat the two situations the same.

A second resentencing hearing occurred on October 25, 2022. Following briefing and argument by both parties, the trial court denied defendant's request for a full resentencing hearing. The trial court filed a written ruling reasoning that defendant is not entitled to resentencing because his section 667.5(b) priors were imposed and stayed instead of imposed and executed.

Defendant filed a timely notice of appeal on October 26, 2022.

### DISCUSSION

*A.  Section 1172.75 Statutory Analysis*

Senate Bill No. 483 (Senate Bill 483) (2021-2022 Reg. Sess.) added section 1171.1[4] to the Penal Code (Stats. 2021, ch. 728). Section 1172.75, subdivision (a), states that "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid." (§ 1172.75, subd. (a).) Section 1172.75 instructs the CDCR to identify those persons in their custody currently serving a term for a judgment that includes an enhancement under section 667.5(b) (excluding sexually violent offenses) and provide such information to the sentencing court that imposed the enhancement. (§ 1172.75,

---

[4] Subsequently renumbered without substantive change as section 1172.75. (Stats 2022, ch. 58, §12, eff. June 30, 2022.)

4

subd. (b).)  Subsequently, the sentencing court "shall review the judgment and verify that the current judgment includes a sentencing enhancement described in subdivision (a)." (§ 1172.75, subd. (c).)  "If the court determines that the current judgment includes an enhancement described in subdivision (a), the court shall recall the sentence and resentence the defendant."  (§ 1172.75, subd. (c).)

Section 1172.75 sets out specific instructions for resentencing.  (§ 1172.5, subd. (d)(1)-(5).)  Section 1172.75, subdivision (d)(1), provides in part, "Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety. . . ."  (§ 1172.75, subd. (d)(1).)

" ' " ' "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.] We begin by examining the statute's words, giving them a plain and common sense meaning." ' " '  [Citation.]  ' "[W]e look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . .  [Citations.]'  [Citation.] That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citations.]'  [Citation.]  We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' " '  [Citation.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 961.)

5

In *People v. Gonzalez*, the California Supreme Court addressed the meaning of the word "impose" as it applied to section 12022.53. (*People v. Gonzalez* (2008) 43 Cal.4th 1118 (*Gonzalez*).) The court in *Gonzalez* analyzed whether the section 12022.5 enhancement must be stricken or if it could be imposed and stayed. (*Id.* at pp. 1122-1123.) The issue arose out of the Legislature's use of the term " 'imposed.' " (*Id.* at p. 1125.) The court concluded that in order for the statute at issue to "make sense" the use of the term " 'impose' " "must be interpreted as shorthand for 'impose and execute.' " (*Id.* at p. 1127.) The court in *Gonzalez* stressed the need to "harmonize the statute internally." (*Id.* at p. 1126.) Specifically, the court compared and analyzed the language in subdivision (f) and subdivision (j) of section 12022.53 in finding "[i]n both instances, the word 'impose' ensures that the statute's punishment and legislative intent will be carried out only if it is interpreted as shorthand for 'impose and then *execute*.' " (*Id.* at p. 1127.) "The principle that a word's meaning may be determined by reference to the rest of the statute allows us to extend this interpretation to the use of 'impose' throughout section 12022.53[, subdivision] (f)." (*Ibid.*)

Here, it is necessary to look at the statute as a whole to interpret the meaning of term "impose." Section 1172.75, subdivision (d)(1), is particularly relevant in this analysis. (§ 1172.75, subd. (d)(1) ["Resentencing pursuant to this section *shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement*, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety"], italics added.)

6

Section 1172.75 subdivision (d)(1)'s requirement that the resentencing shall result in a lesser sentence than the one originally imposed necessitates the conclusion that the repealed enhancement increased the length of the sentence. The only way for the repealed enhancement to have increased the length of a sentence is for the enhancement to have been imposed and executed. If the repealed enhancement was imposed and stayed, the sentence would not have been increased, as was the case here. To interpret "imposed" as used in section 1172.75, subdivision (a), to include when a sentence was "imposed and stayed" would require any sentencing court faced with an "imposed and stayed" enhancement to arbitrarily lower a sentence simply because the judgment contained a stayed enhancement.

Defendant argues the analysis and holding of *Gonzalez* are distinguishable from the statute and facts before this court. Defendant draws a distinction citing the term "impose" being used twice in section 12022.53, subdivision (f), whereas here, the term "impose" is only used once. Defendant suggests because the term "impose" only appears once in section 1172.75 subdivision (a), it does not result in internal inconsistency. However, the number of times a term is used within a subdivision is not dispositive as to internal consistency or lack thereof. As discussed in *Gonzalez*, the court examined the interplay between subdivision (f) and the other subdivisions within section 12022.53 in concluding that "imposed and executed" was the only interpretation that harmonized the statute as a whole. (*Gonzalez*, *supra*, 43 Cal.4th at pp. 1127-1128 [analyzing the interaction between § 12022.53, subd. (f), (g), (h), & (i)]). The same is true for

7

section 1172.75.  In order to harmonize subdivision (d)(1)'s requirement with subdivision (a), the meaning of "impose" must be interpreted to mean "imposed and executed."  Any other interpretation would cause disharmony between subdivision (a) and subdivision (d)(1) of section 1172.75.

In support of his argument of the meaning of "impose," defendant argues that the *Gonzalez* decision put the Legislature on notice of the potential for ambiguity in using the term "impose" without further clarification.  Defendant concludes the Legislature's failure to qualify the term demonstrates the Legislature's intent for both usages ("imposed and stayed" and "imposed and executed") to be operative under section 1172.75.  However, an equally plausible conclusion could be drawn from the same facts.  It could be argued the Legislature was aware of the holding in *Gonzalez* finding that "imposed" meant "imposed and executed" and used the term "imposed" in accordance with the holding in *Gonzalez*.  Ultimately, it is the term's use within the context of the statute as a whole that guides the definition, not the exact terminology used or omitted.  (*Gonzalez*, *supra*, 43 Cal.4th at pp. 1126-1128.)

When reviewing the statute as a whole, the statutory construction that harmonizes the instructions and provisions contained within the statute is one that defines "imposed" as meaning "imposed and executed."  As such, the principles of statutory construction dictate that the term "imposed" as used in section 1172.75, applies only to sentences that are "imposed and executed."

*B.*       *Legislative History*

      *1.*       *Senate Bill No. 136*

Governor Gavin Newsom signed Senate Bill No. 136 (Senate Bill 136) (2019-2020 Reg. Sess.) on October 8, 2019.  Senate Bill 136 is intended to " 'repeal[] a common and costly one-year enhancement that applies for each prior felony prison term or felony county jail term an individual has served.' "  (Sen. Bill 136, Assembly Floor Analysis, 3d reading, as amended Sept. 3, 2019.)  "The imposition of this enhancement is ineffective in protecting public safety, is wasteful of public resources, and is damaging to the families and communities that disproportionately suffer from these long sentences." (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 136 (2019-2020 Reg. Sess.) as amended January 15, 2019, at p. 2.)  Senate Bill 136's author argued, "[t]his single enhancement, applied wholesale and scattershot, is a massive driver of prison and jail populations and associated costs to taxpayers and to the families of incarcerated Californians."  (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 136 (2019-2020 Reg. Sess.) as amended January 15, 2019, at p. 3.)  In discussing the potential benefits of enactment, Senate Bill 136's author offered that "[r]epealing ineffective sentencing enhancements will save hundreds of millions of dollars, reduce prison and jail populations, mitigate racial and gender disparities in incarceration, and end the double punishment for prior convictions."  (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 136 (2019-2020 Reg. Sess.) as amended January 15, 2019, at p. 3.)

*2.     Senate Bill 483*

Senate Bill 483 is intended to "apply retroactively the repeal of sentence enhancements for prior prison or county jail felony terms and for prior convictions of specified crimes related to controlled substances."  (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 483 (2021-2022 Reg. Sess.) as amended March 3, 2021, at p. 1, italics omitted.)  Noting that "[e]nhancements add time to a person's sentence . . . ," the Committee on Revision of the Penal Code recommended retroactively applying the elimination of section 667.5(b) enhancements to people currently held in prisons and jails, "ensuring that no one is serving time based on outdated rules."  (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 483 (2021-2022 Reg. Sess.) as amended March 3, 2021, at pp. 1-3.)  "The retroactive RISE Act is another step forward in sustaining legislative momentum to eliminate unjust sentence enhancements and end wasteful incarceration spending in favor of community reinvestment."  (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 483 (2021-2022 Reg. Sess.) as amended March 3, 2021, at p. 6.)

*C.     The Legislative History of Senate Bills 136 and 483 Illustrates Section 1172.75 was Intended to Apply to Sentences Imposed and Executed*

If a statute is ambiguous, extrinsic aids, including legislative history may be considered in resolving the ambiguity.  (*Gonzalez*, *supra*, 43 Cal.4th at p. 1126.)  " ' "Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute . . . ; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]."

[Citations.]' " (*Gonzalez*, at p. 1126 quoting *People v. Shabazz* (2006) 38 Cal.4th 55, 67-68.)

Here, it is relevant to review the legislative history of both Senate Bill 136 and 483 as Senate Bill 483 provided retroactive relief for the repeal executed in Senate Bill 136. (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 483 (2021-2022 Reg. Sess.) as amended March 3, 2021, at p. 2.) The legislative history of Senate Bill 136 illustrates three primary motivations for the enactment of the bill: (1) sentencing enhancements are ineffective and disproportionately subject the "Black and Latino" communities to longer periods of incarceration; (2) ending double punishment for prior convictions; (3) reallocating "wasteful" spending from imprisonment to community-based services. (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 136 (2019-2020 Reg. Sess.) as amended January 15, 2019, pp. 1-5.)

The legislative history of Senate Bill 483 is also instructive regarding the motivation for its enactment. Senate Bill 483 intended to provide relief for "[p]eople in California jails and prison who were convicted prior to the RISE acts [and] are still burdened by mandatory enhancements." (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 483 (2021-2022 Reg. Sess.) as amended March 3, 2021, at p. 3.) "S[enate Bill] 483 would ensure the retroactive repeal of these sentence enhancements, ensuring that no one is serving time based on rulings that California has already deemed unfair and ineffective." (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 483 (2021-2022 Reg. Sess.) as amended March 3, 2021, at p. 5.) Senate Bill 483 is intended to provide

11

relief for "[t]hose who were convicted prior to their enactment [and] continue to be separated from their families and communities." (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 483 (2021-2022 Reg. Sess.) as amended March 3, 2021, at p. 5.) In discussing the financial benefits of retroactive application, the legislature found, "[s]entencing enhancements . . . put significant financial burdens on taxpayers and families statewide—each additional year in prison costs over $112,600 per person." (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 483 (2021-2022 Reg. Sess.) as amended March 3, 2021, at p. 5.)

The legislative histories of both Senate Bill 136 and 483 contain a clear presupposition by the Legislature of an imposed and executed sentence. Senate Bill 136 intended to ameliorate the disproportionate impact sentencing enhancements have on the "Black and Latino" communities. The Legislature found that sentencing enhancements subject the members of these communities to longer periods of incarceration. (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 136 (2019-2020 Reg. Sess.) as amended January 15, 2019, p. 2.) This intent presupposes that the sentencing enhancements are, in fact, creating longer periods of incarceration. That is not so if the sentencing enhancement is stayed. Senate Bill 136 is also intended to reallocate spending necessary for incarceration to fund community-based services. (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 136 (2019-2020 Reg. Sess.) as amended January 15, 2019, p. 4.) The freeing of funds through the repeal of sentencing enhancements presupposes the affected inmates will spend less time incarcerated. This is not the case in situations

12

where a defendant's enhancement added no additional period of incarceration. Senate Bill 136 also sought to end double punishment for prior convictions. The primary punishment for section 667.5(b) enhancements is one additional year of incarceration. A defendant whose sentence was imposed and stayed does not suffer the same "double punishment" anticipated by the Legislature. As such, the Legislature's intent in enacting Senate Bill 136 would not be served in situations where a defendant's sentence was imposed and stayed.

Senate Bill 483's legislative history cites similar motivations and concerns. (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 483 (2021-2022 Reg. Sess.) as amended March 3, 2021, pp. 1-5.) Senate Bill 483 intended to provide relief to inmates who had been convicted and sentenced prior to the enactment of Senate Bill 136 and are "serving time based on rulings that California has already deemed unfair and ineffective." (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 483 (2021-2022 Reg. Sess.) as amended March 3, 2021, p. 5.) Senate Bill 483 expressed concern about those convicted prior to Senate Bill 136's enactment continuing to be separated from their families and communities because Senate Bill 136 had not been applied retroactively. (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 483 (2021-2022 Reg. Sess.) as amended March 3, 2021, p. 5.) These concerns presuppose a defendant is serving time specifically based on the imposition of additional incarceration as a result of a section 667.5(b) prior. An inmate whose sentence was imposed and stayed is not actually serving any time based on a repealed statute, nor are they separated from their families because Senate Bill 136 has

13

not been applied retroactively. Senate Bill 483's reference to each additional year of imprisonment costing $112,600 per person also contemplates the execution of the sentence. This cost to taxpayers would be irrelevant for defendants whose sentence was imposed and stayed. Funding would not be saved and available for reallocation because a defendant's sentence would not be reduced as a result of the retroactive application of Senate Bill 136.

Defendant argues that section 1172.75's purpose is to reduce as many sentences as possible and suggests the proper outcome is to allow every defendant with a prison prior to have a full resentencing hearing. Defendant also argues the implementation of section 1172.75 was designed to fix the racial disparities in charging, bail availability, and plea bargaining. However, notably, in arguing the purpose of section 1172.75, defendant cites Assembly Bill Nos. 2542 and 256, neither of which are directly related to the enactment of section 1172.75.

The purpose of Assembly Bill No. 2542 (Assembly Bill 2542) was "to prohibit the state from seeking or upholding a conviction or sentence that is discriminatory based on race, ethnicity, or national origin as specified." (Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 2542 (2019-2020 Reg. Sess.) as amended Aug. 1, 2020, p. 2, italics omitted.) Assembly Bill 2542 amended sections 1473 and 1473.7 and added section 745. (Stats. 2020, ch. 317.) The purpose of Assembly Bill No. 256 (Assembly Bill 256) was to "make the California Racial Justice Act of 2020 (CRJA), which prohibits the state from seeking or obtaining a conviction or sentence on the basis of race, ethnicity, or

national origin, apply retroactively and to make other clarifying changes." (Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 256 (2021-2022 Reg. Sess.) as amended May 24, 2021, p. 2, italics omitted.) Assembly Bill 256 acted to amend sections 745 and 1473. While Assembly Bill 2542 and Assembly Bill 256 have certain overall policies in common with Senate Bill 483, the purpose and goals of these bills is separate and apart from the specific legislative intent in enacting Senate Bill 483. To attribute the intent of other bills to Senate Bill 483 based on their common policy views is misplaced.

The findings, costs, and ramifications of Senate Bill 136 and Senate Bill 483 cited during the legislative sessions presuppose inmates who are serving additional time as a result of the sentencing enhancement under section 667.5(b). The references to financial and familial burdens do not logically follow if a defendant is not actually serving additional time as the result of an imposed and executed sentence associated with a section 667.5(b) prior. As such, to interpret the statute to include enhancements that were imposed and stayed would be contrary to the legislative intent and the plain language of the statute.

15

### DISPOSITION

We affirm.

CERTIFIED FOR PUBLICATION

McKINSTER
Acting P. J.

We concur:


MILLER
J.


CODRINGTON
J.